WOODROW D. WOLLESEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wollesen v. Commissioner
Docket No. 25805-85.
United States Tax Court
T.C. Memo 1987-611; 1987 Tax Ct. Memo LEXIS 656; 54 T.C.M. (CCH) 1315; T.C.M. (RIA) 87611; December 16, 1987. William L. Neff, for the petitioner. David S. Kosterlitz, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Section 6653(a) [1]
1979
$ 12,363.30
$ 618.17
1980
19,004.68
950.23
*659 After concessions, the issues that we have decided are: (1) Whether the statute of limitations bars the assessment and collection of deficiencies for the years at issue; (2) if not, whether petitioner is entitled to deduct expenses he claims to have incurred in connection with the practice of law; and (3) whether petitioner is liable for an addition to tax under section 6653(a) for each of the years at issue. Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of Vienna, Virginia, when he filed his petition herein. He timely filed individual Federal income tax returns for both of the years at issue. For convenience and to avoid unnecessary repetition, our remaining findings and opinion will be combined and given separately on the issues as stated above. I. Statute of Limitations
Respondent began his audit of petitioner's 1979 and 1980 returns in early 1982. The audit focused initially on verifying and substantiating the expenses petitioner claimed on the returns. After approximately four months, the focus shifted to the issue of whether *660 petitioner was a partner of a law firm headed by Charles F. Wheatley, Jr. Respondent took the position that petitioner was a partner of Wheatley, and that certain of his expenses were therefore not allowable. Petitioner sent respondent a letter dated October 19, 1982, requesting an appeals hearing on that issue. In order to allow respondent time to consider his appeal of that issue, petitioner signed a Form 872 on November 1, 1982, on which he extended the statute of limitations on the assessment of tax due for 1979 until April 15, 1984. In a cover letter accompanying the extension petitioner stated: "I forward these documents with the understanding that the issue on appeal is whether or not a partnership relationship existed between myself and Mr. Wheatley in the tax years 1979-1980." The audit was subsequently transferred to respondent's Denver, Colorado, office at petitioner's request so that petitioner's attorney, Robert Graft, who was located there, could deal more easily with respondent on the partnership issue. Graft signed Forms 872 on December 9, 1983, on which he extended the statute of limitations on the assessment of tax due for both 1979 and 1980 until April 15, 1985. *661 After the audit was transferred to Denver, respondent decided to refocus on verification and substantiation issues. Frustrated with respondent's decision to refocus on verification and substantiation issues, petitioner mailed respondent a letter on August 1, 1984, in which he stated that he was "revoking and cancelling any and all consents provided by me (or my representative) to extend the time to assess tax for the years 1979 and 1980 (whenever previously given) effective sixty (60) days from the date of this notice." Respondent mailed petitioner a statutory notice of deficiency for 1979 and 1980 on April 15, 1985. The first issue for decision is whether the three-year statute of limitations, section 6501(a), bars the assessment and collection of deficiencies for the years at issue. Petitioner argues that the extensions of the statute of limitations were limited to the issue of whether he was a partner of Wheatley and, if they were not so limited, that the were (1) invalid, (2) revoked, or (3) unenforceable. As the consents that the parties have introduced into evidence are apparently valid and apparently unconditionally extend the statute of limitations to the date the statutory *662 notice was issued to petitioner, petitioner has the burden of proving that the consents are invalid. Adler v. Commissioner,85 T.C. 535, 540-541 (1985).
(a) Limitation
Petitioner argues that a cover letter mailed along with the Form 872 extending the statute of limitations on the assessment of tax due from 1979 until April 15, 1984, limited the extension to the issue of whether he was a partner of Wheatley. The cover letter simply stated that petitioner was forwarding the Form 872 "with the understanding that the issue on appeal is whether or not" he was a partner of Wheatley. Although we doubt that this ambiguous language limited the scope of the extension, we need not decide the issue. Any restrictions that may have existed on the scope of the extension for 1979 originally signed by petitioner had expired when the notice of deficiency was issued. By that time, the original extension had been replaced by extensions executed by petitioner's attorney for both 1979 and 1980. The new extensions were unconditional, and there is no indication that their scope was limited in any way. As the unrestricted extensions signed by petitioner's attorney were in *663 effect when the statutory notice was issued, we hold that the extension of the statute of limitations was not restricted to the issue of whether petitioner was a partner of Wheatley. Cullen v. Commissioner,41 B.T.A. 1054, 1063 (1940), revd. on another issue 118 F.2d 651 (5th Cir. 1941). See also Pursell v. Commissioner,38 T.C. 263, 278-279 (1962), affd. per curiam 315 F.2d 629 (3d Cir. 1963).
(b) Validity
Petitioner argues that there was no meeting of the minds between himself and respondent as to the scope of the consents to extend the statute of limitations and that the consent are therefore invalid.[2] Petitioner's argument is based on section 6501(c)(4), which requires the parties to consent in writing on the period of extensions. We have interpreted the requirement that parties agree to mean that they must manifest a mutual assent to the extension. Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983). We have accordingly held consents to be invalid when respondent has physically changed *664 the terms of a consent after it is signed by a taxpayer, or when a taxpayer has physically altered the terms of a consent without respondent's knowledge. [3] In those circumstances, our rationale for holding the consents to be invalid is that the parties had failed to agree to identical consents. That rationale does not apply to this case. In this case the consents agreed to by respondent were physically identical to the consents agreed to by petitioner. We accordingly conclude that the parties agreed to the consents and hold that the consents are not invalid for lack of agreement. *665 (c) Revocation
Petitioner argues that his letter of August 1, 1984, revoked the consents he had given to extend the statute of limitations on assessing tax for the years at issue. We disagree. By signing the consents at issue, petitioner unambiguously extended the statutes of limitations for the years at issue to April 15, 1985. Respondent accepted the consents, thereby entitling petitioner to an extended period for filing a claim for credit or refund of tax paid for the years. The consents clearly stated that they were to end on the earlier of April 15, 1985, "or the assessment date of an increase in the [tax due for the years at issue] that reflects the final determination of tax and the final administrative appeals consideration." There is no provision in the consents that allows them to be unilaterally revoked earlier by either of the parties. Having mutually agreed to the terms of the consents, neither petitioner nor respondent had the right to unilaterally revoke their consent before the end of the agreement. [4]
*666 (d) Estoppel
Petitioner argues that even if his consents to the statute of limitations are otherwise valid, respondent is equitably estopped from enforcing them. Petitioner bases his argument on representations allegedly made to him by respondent prior to his execution of the first waiver for 1979, that the waivers were restricted in scope and revocable by letter. According to petitioner, those representations induced him to execute the consents.
The essential elements of estoppel are: (1) There must be a misrepresentation or wrongful misleading silence; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom the estoppel is claimed. Estate of Emerson v. Commissioner,67 T.C. 612, 716-618 (1977). The doctrine of estoppel must be applied against respondent with the utmost restraint as the policy of promoting efficient revenue collection normally outweighs *667 the policy of the estoppel doctrine. Schuster v. Commissioner,312 F.2d 311, 317 (9th Cir. 1962), affg. 32 T.C. 998 (1959); Estate of Emerson v. Commissioner, supra at 617. Petitioner contends that the first element of estoppel is satisfied by misrepresentations made to him by respondent. The only evidence that misrepresentations were made to petitioner is his own unsubstantiated testimony. We find petitioner's testimony on this issue to be unconvincing, [5] and consider it significant that petitioner's attorney, who actually signed the final and effective set of consents on petitioner's behalf, did not testify that misrepresentations were made to him. We accordingly hold that petitioner has failed to prove that respondent should be equitably estopped from enforcing the consents, or that the statute of limitations bars the assessment and collection of the deficiencies asserted for the years at issue. *668 II. Deductible Expenses
Petitioner is an attorney. During the late 1960's, he served in Europe as an officer in the United States Army. After leaving the Army, he served in the Federal government. In 1974, he entered private practice as a salaried associate of a law firm headed by Charles F. Wheatley, Jr. Petitioner specialized in energy law at Wheatley's firm. Petitioner gained expertise quickly and, by 1976, had told Wheatley that he wanted to develop his own practice. Petitioner and Wheatley agreed that while he was developing his practice petitioner would continue to accept work from Wheatley and be compensated for the hours he worked. Petitioner received his compensation from Wheatley in the form of a level monthly draw. The draw was not guaranteed, and was contingent on petitioner performing enough work on the cases referred to him by Wheatley to cover the draw. Petitioner performed the work referred to him by Wheatley independently without supervision, and was at liberty to exercise his judgment and discretion to bring about the result Wheatley desired. Petitioner had no right to share in firm profits, and was not entitled to be reimbursed by Wheatley for *669 any expenses except the expenses of out-of-town travel required for specific cases. Although he received administrative support from Wheatley's office staff, he was not required to perform the work referred to him by Wheatley in Wheatley's office. In fact, he spent more than 90 percent of his time during the years at issue working outside of Wheatley's offices, and only visited them when he needed to have administrative work performed. During the years in issue, petitioner was an independent contractor to the Wheatley firm, and not an employee. Petitioner maintained an office in his home that was his principal place of business during the years at issue. The home office consisted of two rooms that petitioner used exclusively and on a regular basis for business purposes. All of petitioner's earnings from his legal practice during the years at issue derived in part from his use of the home office. To the extent that specific expenses claimed by petitioner relate to his home office, the deduction of the expenses is not disallowed by section 280A(c). In addition to performing work for the Wheatley firm, petitioner performed work for a group of European investors during the years *670 at issue. He met the leaders of the group when he was stationed in West Germany with the United States Army. The leaders of the group asked him to locate commercial properties in the United States for the group to invest in. Petitioner's agreement with the investors, which was executed by their agent on September 21, 1978, obligated them to reimburse him "for any and all out-of-pocket costs of whatever type and description" that he incurred in representing them. The agreement specified that reimbursable expenses included, but were not limited to, "all travel, food, lodging, professional or outside services of whatever type to include consultants, assistance fees, staff costs, communication, reproduction, equipment, special facilities, apparel, or materials acquisition, and the like." The agreement provided further that the investors were to pay petitioner for his services the greater of $ 150 an hour or a percentage of their gross investment. The investors gave petitioner a cash advance of at least $ 2,000 in 1978 that he used for his expenses and periodically gave petitioner additional advances during 1979 and 1980. During 1979 and 1980, petitioner was confident that he would *671 receive all amounts due him under the agreement, including a reimbursement of all expenses.
(a) Estoppel
Before considering the individual items of expense claimed by petitioner, we must address at the outset petitioner's argument that respondent should be equitably estopped from disallowing any of his claimed expenses on the grounds of lack of substantiation. Petitioner states that he was told in late 1982 that he would no longer be required to substantiate the expenses, and that he is now unable to substantiate a portion of the expenses because some of his records were stolen in 1984. We disagree with petitioner that these circumstances establish a basis for estoppel. As we stated supra, one of the essential elements of estoppel is that the party seeking to apply it have been adversely affected by the acts or statements of the person against whom an estoppel is claimed. As we see it, petitioner's alleged injury -- his inability to substantiate all of his expenses -- is due to the alleged theft of his records rather than any of respondent's alleged acts or statements. Petitioner has failed to establish a proximate relationship between the theft and respondent's *672 acts or statements. Although we sympathize with petitioner's plight, the circumstances stated simply do not give rise to estoppel. [6]
(b) Employee v. Independent Contractor
Respondent argues that petitioner was an employee of Wheatley's firm during the years at issue and that a number of the expenses deducted by petitioner are therefore not deductible. Petitioner denies that he was an employee of Wheatley's firm, and argues that he performed the work referred to him by Wheatley as an independent contractor.
Whether a taxpayer performs work as an employee is a question of fact. Ellison v. Commissioner,55 T.C. 142, 152 (1970). The crucial distinction between employees and independent contractors is the degree of control that is exercised over their work. Porter v. Commissioner,88 T.C. 548, 554-555 (1987). *673 An employer-employee relationship is characterized by employer control over the manner in which services are performed and the means by which the services are accomplished. Porter v. Commissioner, supra at 554-555. Independent contractors are at liberty to exercise their judgment and discretion to bring about a desired result. Metcalf & Eddy v. Mitchell,269 U.S. 514, 520-521 (1926). After carefully reviewing the evidence presented in this case, including the testimony of Charles F. Wheatley, Jr., we conclude that petitioner was an independent contractor rather than an employee of Wheatley during the years at issue. Wheatley testified that cases were assigned to petitioner during the years at issue, and that petitioner was responsible for independently performing the work necessary to bring the cases to the desired results. Wheatley testified that the work included representing the clients before Federal agencies, communicating with expert consultants, and preparing legal briefs. Wheatley emphasized that petitioner "required no direct supervision" during the years at issue. To the extent that the issue is relevant to the deductibility of *674 specific expenses reported by petitioner, we conclude that petitioner was an independent contractor to Wheatley's law firm rather than an employee of the firm.
(c) European Investors
Part of the deductions disallowed by respondent were expenses that petitioner alleged he incurred in connection with his representation of European investors. Respondent argues that the expenses are not deductible because petitioner had a right to be reimbursed for them. We agree, to the extent of petitioner's cash costs. We need not, and do not, decide here whether petitioner has adequately substantiated the out-of-pocket expenses he claims to have incurred on behalf of European investors. Any such expenses are not deductible because petitioner's agreement with the investors entitled him to be reimbursed for all "out-of-pocket costs of whatever type and description" that he incurred in representing them. As petitioner had a right to be reimbursed for the expenses, he is not entitled to deduct them as business expenses during the years at issue. [7]Flower v. Commissioner,61 T.C. 140, 152 (1973), affd. without published opinion 505 F.2d 1302 (5th Cir. 1974). *675 We accordingly hold that respondent properly disallowed the deduction of the portion of petitioner's cash expenses that relate to his representation of European investors.
(d) Specific Deductions
Petitioner's position is that the expenses at issue are ordinary and necessary expenses of his legal practice that are deductible under section 162(a). To be deductible under section 162(a), an expense must be both *676 ordinary and necessary. Welch v. Helvering,290 U.S. 111, 113 (1933). To be necessary to a taxpayer's business, an expense must be more than remotely or incidentally connected with the business. Larrabee v. Commissioner,33 T.C. 838, 843 (1960). Even assuming an expense meets the requirements of section 162(a), it will still be disallowed if it is a personal, living, or family expenses. Sec. 262. In distinguishing between deductible business expenses and nondeductible personal expenses, the essential inquiry is whether a sufficient nexus exists between the expenses and the carrying on of petitioner's trade or business, or whether the expenses are essentially personal in nature. Kowalski v. Commissioner,65 T.C. 44, 63 (1975), revd. on other grounds 544 F.2d 686 (3d Cir. 1976), revd. 434 U.S. 77 (1977); Henderson v. Commissioner,T.C. Memo. 1983-372. Where both secs. 162(a) and 262 apply to an expense, section 262 takes priority and the expense is not deductible. Sharon v. Commissioner,66 T.C. 515, 522-523 (1976), *677 affd. per curiam 591 F.2d 1273 (9th Cir. 1978), cert. denied 442 U.S. 941 (1979). 1. Travel and Entertainment Expenses - In the notice of deficiency issued to petitioner, respondent disallowed the deduction of $ 8,394.67 and $ 9,957.21 of travel and entertainment expenses reported by petitioner for 1979 and 1980, respectively. Those amounts are the total amounts reported by petitioner as travel and entertainment expenses on his Schedule C for those years. Petitioner identifies $ 5,556.65 and $ 6,000.88 of the amounts disallowed as expenses incurred in connection with his representation of the European investors. As stated supra, those amounts are not deductible as petitioner has a right to be reimbursed for them. The remaining travel and entertainment expenses at issue total $ 2,838.02 and $ 3,956.33 for 1979 and 1980, respectively. Petitioner identifies the subject of those expenses as follows: 1979
1980
Meals Related to Business
Discussions and Entertainment
$ 1,698.84
$ 2,443.88
Liquor for Home Entertainment
of Clients
243.57
631.66
Lunches at FERC
106.25
295.50
Local Transportation
99.95
-
Trips to Atlanta
(One each year)
334.95
171.50
Total Not Identified
354.46
413.79
Total Deducted
$ 2,838.02
$ 3,956.33
*678 We have carefully reviewed the evidence regarding each of the amounts identified above, and conclude for the following reasons that petitioner has failed to prove that they are deductible. Meals - The $ 1,698.84 and $ 2,443.88 for 1979 and 1980, respectively, that petitioner identifies as having been incurred for meals were for meals consumed during meetings petitioner and with friends and associates. With the exception of a will he drafted for one of the participants, petitioner performed no legal work for any of those friends or associates. The topics discussed at the meetings were only remotely, if at all, connected with his energy law practice. We therefore conclude that the meetings were primarily personal in nature and that the expenses incurred by petitioner for meals at the meetings are nondeductible. Liquor - Petitioner identifies $ 243.57 and $ 631.66 in 1979 and 1980, respectively, as expenses for liquor allegedly used to entertain clients at his home. He failed to identify any specific individuals entertained, the dates on which entertainment took place, or otherwise relate the expenses to his law practice. We are accordingly unable to conclude that the *679 liquor expenses were business rather than personal expenses. Cf. Andress v. Commissioner,51 T.C. 863, 869 (1969), affd. per curiam 423 F.2d 679 (5th Cir. 1970). Lunches at FERC - There is no evidence that petitioner entertained clients at the Federal Energy Regulatory Commission ("FERC"). The amounts petitioner deducted for lunches at FERC appear instead to simply be his own lunch expenses, which are nondeductible personal expenses. Fife v. Commissioner,73 T.C. 621, 625 (1980); sec. 1.262-1(b)(5), Income Tax Regs.
Local Transportation - Petitioner identifies $ 99.95 as an amount expended for local transportation in 1979. He failed to provide any details to establish that it was incurred and to enable us to determine whether it was business related. Trips to Atlanta - Petitioner identifies $ 334.95 and $ 171.50 in 1979 and 1980, respectively, as expenses for trips to Atlanta. Although he gave vague testimony that the purpose of the trips was to attend social functions in an attempt to gain clients, we consider it significant that he failed to identify the social functions or name a *680 single individual at the functions that he attempted to gain as a client. We are accordingly unable to conclude that the expenses of the trips to Atlanta were ordinary and necessary business expenses. Other Expenses - Petitioner claims to have incurred, but failed to provide any details whatsoever as to the nature of, $ 354.46 and $ 413.79 of unidentified travel and entertainment expenses in 1979 and 1980, respectively. Without any identification of the expenses, we are unable to conclude that they are deductible as ordinary and necessary business expenses. In sum, we are unable to conclude that the travel and entertainment expenses petitioner identified as having been incurred in connection with his representation of energy clients were deductible business expenses rather than nondeductible personal expenses. We accordingly hold that petitioner has failed to prove that he is entitled to deduct the expenses. 2. Business Contributions - In the notice of deficiency issued to petitioner, respondent disallowed the deduction of $ 545 of business gifts reported by petitioner in 1979. That amount is the total amount reported by petitioner as business contributions on *681 his Schedule C for 1979.
Taxpayers may, in some circumstances, deduct the cost of gifts given to establish and maintain customer goodwill as an ordinary and necessary business expense under section 162(a). See Teeling v. Commissioner,42 T.C. 671, 686 (1964). To be deductible under 162(a), a business gift must be both ordinary and necessary. Personal gifts are not ordinary and necessary business expenses. Teeling v. Commissioner, supra at 686. [8]
Petitioner *682 has identified the following as business gifts given in 1979: Item
Amount
Bottle of Champagne
$  50.00
Toys
18.69
Plant Repair
10.26
Headband
21.00
Goggles
50.00
Picnic Basket
50.00
Flowers for Real Estate Women
47.45
Flowers for Wheatley Funeral
106.00
Flowers for Secretaries
111.12
Total Deducted but Not Identified
80.48
Total Deducted
$ 545.00
Petitioner identified the bottle of champagne and the flowers for real estate women as gifts relating to his work for European investors. The $ 97.45 that he paid for those items is not deductible because he had a right to be reimbursed for it. We have reviewed the cryptic identification of recipients and business purpose of the remaining expenses that petitioner identified and are unconvinced that any of them are deductible business rather than nondeductible personal gifts. We accordingly are unable to conclude that they are deductible. Petitioner has failed to supply us with any information on the $ 80.48 of items that he deducted but did not identify. We are accordingly unable to conclude that they are ordinary and necessary business expenses. In sum, we hold that petitioner has failed *683 to prove that any of the $ 545 that he deducted as business gifts in 1979 are deductible. 3. Automobile Expense - Petitioner deducted $ 7,201.28 and $ 7,658.86 of expenses related to his vehicles in 1979 and 1980, respectively. Respondent disallowed the deduction of both amounts. Petitioner owned three vehicles in 1979 and 1980. He identified the use of the vehicles as related to his various activities as follows: Activity
1979
1980
European Investors
60.9%
55.4%
Wheatley Firm Energy Clients
13.8%
11.6%
Home Office and Wheatley Offices
25.3%
33.0%
Totals
100.0%
100.0%
Petitioner introduced records that support the allocations of his vehicle usage to the above activities. Respondent failed to point out any specific inaccuracies in the allocations, and we accordingly accept them with modifications as discussed. infra.
After reviewing the evidence offered by petitioner, we conclude that he has proven that he incurred $ 8,654.82 and $ 7,726.82 of expenses related to his use of the vehicles in 1979 and 1980, respectively. Petitioner argues that his vehicle expenses are deductible as ordinary and necessary business expenses *684 under section 162(a). We discuss separately the deductibility of the proportion of the expenses that relate to each of petitioner's activities. European Investors - The proportion of petitioner's vehicle expenses that relate to his work performed for European investors is not deductible as he had a right to be reimbursed for them. Travel Between Home Office and Wheatley Firm - Respondent's position is that the proportion of petitioner's vehicle expenses that relate to his travel between his home and the Wheatley firm is nondeductible commuting expenses. A taxpayer's cost of commuting between his home and his place of business is generally personal and nondeductible. Commissioner v. Flowers,326 U.S. 465, 469-470 (1946). Expenses incurred traveling between two places of business may, however, be deductible. Steinhort v. Commissioner,335 F.2d 496, 504 (5th Cir. 1964), affg. and remanding T.C. Memo. 1962-233. Where one of a taxpayer's places of business is his home office, his cost of traveling between the home office and another *685 place of business is deductible if the home office is his principal place of business. Curphey v. Commissioner,73 T.C. 766, 778 (1980). Whether a home office is a taxpayer's principal place of business is a question of fact to be determined by evaluating all the evidence. Wisconsin Psychiatric Services v. Commissioner,76 T.C. 839, 849 (1981). We found as a fact that petitioner's home office was his principal place of business. We based that finding on petitioner's testimony that he performed at least 90 percent of his work outside the Wheatley office. His testimony was supported by the testimony of Francis D. Delaney, who was a secretary at the Wheatley office during the years at issue. She testified that petitioner was seldom in the Wheatley office, that she relayed messages to him at his home, and that he was generally reachable there. We accordingly conclude that petitioner's trips between his home office and the Wheatley office were not nondeductible commutes, and hold that the proportion of his vehicle expenses that relate to such trips are deductible under section 162(a) as local travel expense. Wheatley Firm Energy Clients *686 - Petitioner argues that the proportion of his vehicle expenses identified as relating to his representation of energy clients is deductible under section 162(a). After reviewing carefully the logs maintained by petitioner, we are unable to conclude that all of the trips identified by petitioner as local travel for the Wheatley firm were for business purposes. A number of the trips are to restaurants for meals that we are unconvinced are business related. Although the logs convince us that a portion of petitioner's use of his vehicles related to local travel for the Wheatley firm, we are unable to conclude from the logs that petitioner accurately identified the proportion of the use of the vehicles that related to that travel. Where, as here, a taxpayer demonstrates that he is entitled to a deduction but is unable to substantiate the exact amount of the deduction, it is our responsibility to determine the appropriate amount of the deduction. Durkin v. Commissioner,87 T.C. 1329, 1397 (1986) (interpreting Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930)). *687 In arriving at our determination we must weigh our judgment heavily against petitioner as he is responsible for the deficiency in the proof. Durkin v. Commissioner, supra.After carefully considering the entire record, we conclude that one-half of the use of petitioner's vehicles that he identified as local travel for the Wheatley firm is in fact deductible. In sum, we hold that petitioner has established that he is entitled to deduct the following amounts of vehicle related expenses during the years at issue. Activity
Percentage Deductible
1979
1980
European Investors
0%
0%
Wheatley Firm Energy Clients
6.9%
5.8%
Home Office to Wheatley Office
25.3%
33.0%
Total Percent Deductible
32.2%
38.8%
Vehicle-Related Expense
$ 8,654.82 $ 7,726.82 Expense Deductible
$ 2,786.85 $ 2,998.01 4. Depreciation Expense - Petitioner alleged in his petition that respondent erred in disallowing depreciation deductions of $ 10,162.65 and $ 4,496.12 for 1979 and 1980, respectively. The depreciation claimed by petitioner is from two types of property: (1) furniture for his home office, and (2) a 1979 Chevrolet Blazer. To *688 establish that he is entitled to depreciate the property, petitioner must first prove that the property was used by him, at least partially, in his trade or business. Sec. 167(a); Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 744 (1973). When property is used partly for business purposes and partly for personal purposes, depreciation is deductible only to the extent of the business use. Henry Schwartz Corp. v. Commissioner, supra;International Artists, Ltd. v. Commissioner,55 T.C. 94, 105 (1970). The proportion of the use of property that is personal is a question of fact. International Artists, Ltd. v. Commissioner, supra at 104. After reviewing petitioner's testimony and the exhibits, we conclude that petitioner has established that the furniture in his home office was used entirely for business purposes. We are unable to conclude, however, that the 1979 Chevrolet Blazer was used entirely for business purposes. As we have discussed, supra, in our discussion of the deductibility of petitioner's other automobile expenses, we conclude that petitioner has failed to establish that half of the usage that *689 he identified as related to his work for the Wheatley firm's energy clients was business related. Petitioner identified 19.9 and 13.3 percent of his 1979 and 1980 usage of the 1979 Chevrolet as related to his work for the Wheatley firm's energy clients. We accordingly conclude that petitioner has failed to establish that one-half of those percentages, or 9.95 and 6.65 percent of the respective usages in 1979 and 1980, were business related. In sum, we hold that the following proportions of the depreciation computed on petitioner's depreciable assets are deductible: Asset
1979
1980
1979 Chevrolet Blazer
90.05%
93.35%
Home Office Furniture
100.00%
100.00%
Having determined the percentage of business use of each asset, we must next determine the amount of depreciation to which petitioner is entitled. The four factors that determine the amount of depreciation computed on petitioner's property are: (1) his basis in the property, (2) the salvage value of the property, (3) the depreciation period, and (4) the depreciation method. Basis - We have carefully reviewed the evidence presented by petitioner and conclude that he has proven the following *690 basis in depreciable assets: Date
Asset
Purchased
Basis
1979 Chevrolet Blazer
Blazer
3/79
$ 8,100.00
Additions to Blazer
5/79
933.25
Furniture
Desk
8/79
840.00
Chairs
5/79
481.00
9/79
1,053.38
Modular Sofa
7/79
1,253.00
Salvage Value - Salvage value must be taken into account in determining straight-line depreciation. Sec. 1.167(a)-1, Income Tax Regs. It need not, however, be taken into account in computing annual depreciation under the declining balance method except that an asset may not be depreciated below a reasonable salvage value. Sec. 1.167(b)-2(a), Income Tax Regs.[9] Petitioner has not taken salvage value into account in determining the depreciation of any of his depreciable assets. As we discuss infra, the 1979 Chevrolet Blazer is ineligible to be depreciated under any method other than the straight-line method. We must therefore determine a reasonable salvage value for it. Using our best judgment, we conclude that $ 2,810 is a reasonable salvage value *691 for the 1979 Chevrolet Blazer. [10]
Depreciation Period - Petitioner adopted an eight-year useful life for the furniture and a three-year useful life for the 1979 Chevrolet Blazer in his schedule of depreciation set forth in the exhibits. Respondent did not contest the useful lives, and we consider them to be reasonable. Depreciation Method - Petitioner used the double declining balance method to depreciate his depreciable property. One of the requirements for an asset to be depreciated under the double declining balance method is that the original use of the asset must have commenced with the taxpayer depreciating it. Sec. 167(c). The 1979 Chevrolet Blazer was purchased used *692 and is therefore ineligible to be depreciated using the double declining balance method. Sec. 1.167(c)-1(b)(2) ex. (2), Income Tax Regs. The remainder of petitioner's assets, including the $ 933.25 of improvements made by petitioner to the 1979 Chevrolet Blazer, may be depreciated using the double declining balance method. Sec. 1.167(c)-1(b)(2) ex. (2), Income Tax Regs. In sum, we conclude that petitioner has proven that he is entitled to deduct the following amounts of depreciation during the years at issue: Date
Salvage
Depreciation
Asset
Acquired
Basis
Value
Method
1979 Chevrolet Blazer
Blazer
3/79
$ 8,100.00
$ 2,000
SL
Improvements
5/79
933.25
-
DDB
Total
Percent Deductible
Amount Deductible
Furniture
Desk
8/79
840.00
-
DDB
Chairs
5/79
481.00
-
DDB
9/79
1,053.38
-
DDB
Modular Sofa
7/79
1,253.00
-
DDB
Total
Percent Deductible
Amount Deductible
Total Depreciation Deductible
Date
Useful
Depreciation
Asset
Acquired
Life
1979
1980
1979 Chevrolet Blazer
Blazer
3/79
3 yrs
$ 1,694.44 $ 2,033.33 Improvements
5/79
3 yrs
414.78 345.65 Total
$ 2,109.22 $ 2,378.98 Percent Deductible
90.05%
93.35%
Amount Deductible
$ 1,899.35 $ 2,220.78 Furniture
Desk
8/79
8 yrs
87.50 188.13 Chairs
5/79
8 yrs
87.17 100.21 9/79
8 yrs
87.78 241.40 Modular Sofa
7/79
8 yrs
156.62 274.10 Total
$   412.07 $   803.84 Percent Deductible
100%
100%
Amount Deductible
$   412.07 $   803.84 Total Depreciation Deductible
$ 2,311.42 $ 3,024.62 *693 5. Telephone Expense - Petitioner deducted $ 923.50 and $ 1,207.14 of telephone expense in 1979 and 1980, respectively. Respondent disallowed the deduction of both amounts. Petitioner argues that the amounts he deducted represent a fair allocation of his telephone expenses, which totaled $ 1,211.16 and $ 1,391.47 in 1979 and 1980, respectively, between business and personal use. He produced no records allocating his telephone usage between business and personal expenses. Although we are convinced that petitioner incurred some deductible phone expenses in the years at issue, we are unconvinced that they were as large as the amounts he deducted. After carefully considering petitioner's testimony and the remainder of the record, and keeping in mind that the amounts deducted by petitioner likely include telephone calls made on behalf of the European investors that are reimbursable and therefore not deductible by him, we conclude that petitioner is entitled to deduct $ 200 of telephone expenses in each of the years at issue. Durkin v. Commissioner, supra at 1397. 6. Consultant Fees - Petitioner deducted $ 7,594.85 and $ 4,556.90 of consultant fees *694 in 1979 and 1980, respectively. Respondent disallowed the deduction of both amounts. Petitioner has identified the following consultant fees as having been paid by him in 1979 and 1980: 1979
Consultant
Fee
J. Ingram, Esq.
$    25.00
M. Salters
15.00
R. Vail
350.00
P. Jones
649.00
J. Kovich
25.00
P. Vermeil
92.00
E. Janke
697.00
K. McGilberry
50.00
B. Edmonds
200.00
G. Hall
600.00
R. Haines
3,378.95
Amounts Deducted
But Not Identified
1,512.90
Total Deducted
$ 7,594.85
1980
Consultant
Fee
J. Parker
$   369.00
K. Witherow
75.00
M. Semansky
324.00
J. Montouro
65.00
D. Rommel
500.00
J. Hanley
100.00
B. Edmonds
360.00
G. Hall
1,815.00
J. Conaghan
100.00
J. Shuster
20.00
Amounts Deducted
But Not Identified
828.90
Total Deducted
$ 4,556.90
Petitioner identified the following of the fees as having been incurred on behalf of the European investors: 1979
Consultant
Fee
M. Salters
$    15.00
P. Jones
649.00
J. Kovich
25.00
P. Vermeil
92.00
E. Janke
697.00
B. Edmonds
200.00
G. Hall
600.00
R. Haines
3,378.95
Total
$ 5,656.95
1980
Consultant
Fee
P. Parker
$ 369
M. Semansky
324
J. Montouro
65
D. Rommel
500
J. Hanley
100
B. Edmonds
360
G. Hall
1,815
J. Conaghan
100
J. Shuster
20
Total
$ 3,653
*695 The consultant fees that petitioner incurred on behalf of the European investors are not deductible because petitioner had a right to be reimbursed for them. Petitioner has only vaguely identified the business purpose of the remaining consultant fees that he has identified, which total $ 425 in 1979 and $ 75 in 1980, and he has provided no details regarding the consulting fees that he deducted but failed to identify. In these circumstances, we are unable to conclude that petitioner incurred any deductible consulting fees during the years at issue. In sum, we hold that petitioner has failed to prove that he paid any consulting fees during the years at issue that qualify to be deducted. 7. Supplies Expense - Petitioner deducted $ 1,054.49 and $ 1,166.91 of office supply expenses in 1979 and 1980, respectively. Respondent disallowed the deduction of both amounts. Petitioner identified the following amounts as having been expended for office supplies during 1979 and 1980: 1979
Typewriter Repair
$    37.12
Address Labels
4.05
Music Tapes
40.00
Stamps and Postage
147.00
Stationary
51.50
Plants for Offices
(Home and Wheatley Office)
423.20
Expenses for European Investors
Blank Cassette Tapes
27.32
Movie Camera
359.77
Film Processing
110.00
Jacket
139.21
Shoes
52.45
Total
$ 1,391.62
*696 1980
Address Labels
$     5.09
Luggage Tags
5.00
Replace Office Table Glass
142.00
Clean Ink Stain on Office Carpet
48.00
Stamps and Postage
130.00
Film Processing for European Investors
36.35
Lunch Plates
24.36
Safety Deposit Box
20.00
Plants for Home and Wheatley Office
532.13
Total Deducted But Not Identified
223.98
Total Deducted
$ 1,166.91
The expenses that petitioner identified as having been incurred in connection with his work for European investors, which total $ 688.75 in 1979 and $ 36.35 in 1980, are not deductible because petitioner was entitled to be reimbursed for them. Of the remaining expenses identified by petitioner, $ 423.20 and $ 532.13 in 1979 and 1980, respectively, were identified as expenses for plants for petitioner's home office and his office at the Wheatley office. Additionally, $ 40 was identified as an expense in 1979 for music tapes, $ 5 was identified as an expense in 1980 for lunch plates, and $ 20 was identified as an expense in 1980 for a safety deposit box. No evidence was presented to prove that the presence of the plants in petitioner's offices were either necessary or helpful to petitioner *697 in performing his legal work. There was similarly no evidence presented that the music tapes, luggage tags, lunch plates, and safety deposit box were purchased for business purposes. These expenses appear instead to be primarily personal expenses that only tangentially, if at all, aided petitioner's business. Cf. Henderson v. Commissioner,T.C. Memo 1983-372. We accordingly conclude that petitioner has failed to prove that they are deductible. The following expenses identified by petitioner appear to be primarily business related: 1979
1980
Stamps & Postage
$ 147.00
$ 130.00
Stationary
51.50
-
Address Labels
4.05
5.09
Repairs
37.12
190.00
Total
$ 239.67
$ 325.09
Petitioner failed to allocate the expenses between his work for the European investors and his energy-related work. Petitioner testified, however, that he normally took his energy-related work to the Wheatley firm to be typed and mailed. We accordingly conclude that most of the expenses were incurred on behalf of the European investors and are not deductible. Applying the Cohan rule based upon the record as a whole, we conclude that one-third of *698 the expenses, or $ 79,89 in 1979 and $ 108.36 in 1980, are deductible. Durkin v. Commissioner, supra at 1397. Petitioner has provided no details regarding the $ 223.98 of expenses that he deducted for 1980 but failed to identify. In these circumstances, we are unable to conclude that the expenses are deductible. In sum, we hold that petitioner has proven that he is entitled to deduct supplies expense of $ 79.89 in 1979 and $ 108.36 in 1980. 8. Dues and Publication Expense - Respondent disallowed the deduction of all of the $ 882.40 of Dues and Publication expense deducted by petitioner on the Schedule C of his 1980 return. Petitioner identified the following as dues and publication expenses incurred in 1980: Dues
American Bar Association
$    90.00
District of Columbia Bar
65.00
Pennsylvania Bar
40.00
Federal Energy Bar Association
45.00
Diners Club
30.00
American Express
35.00
Watergate Health Club
300.00
Credit Card Registry
5.00
Washington & Jefferson College Alumni
42.40
Total Dues
$   652.40
Publications
Washington Post
$    96.00
Journal
43.75
Solar Age
18.00
Money Magazine
14.95
Southern Living
34.00
Star
7.00
Hudson Home
20.00
Diners Club Magazine
6.00
Smithsonian Magazine
14.00
Washingtonian
35.95
Cash Purchases
(Wall Street Journal
New York Times
Barrons
Skin Diver Magazine
Ski and Skiing Magazine)
150.00
Total Publications
$   439.65
Total Dues and Publications
$ 1,092.05
*699 We have reviewed the dues and publications expenses detailed by petitioner, and conclude that he has proven that the following qualify as ordinary and necessary business expense: American Bar Association
$  90.00
District of Columbia Bar
65.00
Pennsylvania Bar
40.00
Federal Energy Bar Association
45.00
American Express
35.00
Solar Age
18.00
$ 293.00
The remainder of the expenses appear to be nondeductible personal expenses. Although the memberships and publications may have been tangentially useful to petitioner in connection with his legal work, he has not convinced us that he used them principally for business purposes. [11] Cf. Wallendal v. Commissioner,31 T.C. 1249, 1252 (1959). We accordingly hold the petitioner has failed to prove that he is entitled to deduct more than $ 293 as dues and publications expense in 1980. *700 9. Repair Expense - Petitioner deducted $ 152.80 of repair expense on his 1980 return. Respondent disallowed the deduction of the entire amount. Although petitioner has failed to discuss this item separately on brief, it appears that petitioner may have included the 1980 repair expenses in either the supplies expenses or the automobile expenses that he identified in the exhibits. To the extent that petitioner has not included the repair expenses in another category of expense, we conclude that he has abandoned the issue of their deductibility. [12]
10. Donation and Gift Expense - Respondent disallowed the deduction of all of the $ 1,579.40 of donation and gift expenses deducted by petitioner on the Schedule C of his 1980 return. Petitioner has identified the following as donations and gifts made in 1980: UNICEF
$    24.91
Christmas Seals
5.00
March of Dimes
50.00
American Bar Endowment
36.72
Fairfax Toys for Tots
36.00
Goodwill
915.00
Total Deducted
But Not Identified
511.77
Total Deducted
$ 1,579.40
*701 We note at the outset that petitioner has failed to prove that any of the contributions are ordinary and necessary business expenses. Instead, the amounts appear to be personal charitable contributions which are properly deductible by petitioner, if at all, as itemized deductions. The following analysis of the deductibility of the contributions is made on the basis of the contributions' being allowable as itemized deductions. The $ 915 petitioner deducted for donations to Goodwill represents his own appraisal of the value of used clothing and furniture he donated to Goodwill. After reviewing the receipts introduced by petitioner to support the $ 915 deduction claimed for contributions to Goodwill, we are convinced that petitioner donated used clothing and furniture to Goodwill and is entitled to some deduction for the value of those donations. The limited description of the items contained on the receipts does not convince us, however, that the value of the items was $ 915. In these circumstances it is our responsibility to determine the appropriate amount of the deduction. Durkin v. Commissioner, supra at 1397. After carefully considering petitioner's testimony *702 and the description of the donated items contained on his receipts, we conclude that petitioner is entitled to a charitable deduction in 1980 of $ 305 for items donated to Goodwill. The $ 36.72 that petitioner deducted as a contribution to the American Bar Endowment represents a portion of two checks petitioner wrote to that endowment in 1980. Petitioner has introduced no evidence of the purpose of the checks. The checks appear to be petitioners semi-annual payments to a group insurance program administered by that endowment and the deduction appears to represent the portion of the payments that was refunded to the endowment and used by it for charitable purposes. See American Bar Endowment v. United States,4 Cl. Ct. 404, 407-408 (1984), modified 761 F.2d 1573 (Fed. Cir. 1985), revd. 477 U.S. 105 (1986). The Supreme Court has held that such amounts are not deductible by the individuals insured unless they prove, inter alia, that they intentionally paid more for insurance than they would have paid for insurance elsewhere intending to make a charitable contribution to the American Bar Endowment. United States v. American Bar Endowment, *703 477 U.S. at    . Petitioner has offered no such proof. In these circumstances, we conclude that petitioner has failed to prove that he is entitled to deduct the $ 36.72 as a charitable contribution. After reviewing the remaining four items identified by petitioner, we conclude that they are properly deductible as charitable contributions. As petitioner has failed to identify the recipients of any of the $ 511.77 of donations that he deducted on his 1980 return but failed to identify, we are unable to conclude that they qualify for deduction. In summary, we hold that petitioner has proven that he is entitled to deduct the following charitable contributions as itemized deductions in 1980: UNICEF
$  24.91
Christmas Seals
5.00
March of Dimes
50.00
Fairfax Toys for Tots
36.00
Goodwill
305.00
Total
$ 420.91
11. Investment Tax Credit - Petitioner deducted $ 861.04 and $ 220.95 of investment credit in 1979 and 1980, respectively. Respondent disallowed the deduction of both of those amounts. During the years at issue, petitioner was entitled to a credit against tax of 10 percent of his qualified investment in depreciable property used in *704 a trade or business. Sec. 38; sec. 46(a); sec. 48(a). Section 46(c) defined qualified investment as a percentage of the basis of new, and the cost of used, depreciable property placed in service during the year. The percentages varied according to the useful life of the property as follows: Useful Life
Percentage
3 yrs. or more but
less than 5 yrs.
33 1/3
5 yrs or more but
less than 7 yrs.
66 2/3
7 yrs or more
100    Section 1.48-1(b)(2), Income Tax Regs. requires the cost or basis of property used to determine petitioner's qualified investment in property to be reduced by the proportion of the property's cost or basis on which a deduction for depreciation is not allowable. We have already established, supra, in our discussion of petitioner's depreciation expense deduction the items of depreciable property that petitioner placed into service in 1979, their useful lives, and the proportion of their cost or basis on which a deduction for depreciation was not allowable. Based on our conclusions in that section, *705 we hold that petitioner is entitled to the following amounts of investment tax credit for 1979: % of Cost
Basis on Which
Useful
Depr. Deduction
Qualified
Inv.
Item
Cost/Basis
Life
Allowable
Inv.
Credit
1979 Blazer
& Additions
$ 9,033.25
3 yrs
90.05
$ 2,711.48
$ 271.15
Furniture
3,627.38
8 yrs
100.00
$ 3,627.38
362.74
Total
$ 633.89
As petitioner apparently placed no property in service in 1980, we conclude that he is entitled to no investment tax credit for that year. 12. Other Expenses - On brief, petitioner argues that his gross receipts from his legal practice were lower in 1980 than the amount he reported on his 1980 return. Petitioner argues also on brief that he is entitled to deduct utilities and depreciation related to his home office in both of the years at issue. Petitioner did not raise any of these matters earlier. These are new matters, not properly pleaded, that we will not consider. Rule 41(b); Rule 34(b)(4); Markwardt v. Commissioner,64 T.C. 989, 997 (1975); L & L Marine Service, Inc. v. Commissioner,T.C. Memo. 1987-428 n. 10. *706 III. Negligence
Respondent determined that petitioner is liable for the addition to tax provided by section 6653(a) for 1979 and 1980.
Section 6653(a) imposes an addition to tax of five percent if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proving that the addition to tax determined by respondent does not apply. Luman v. Commissioner,79 T.C. 846, 860-861 (1982). Under section 6653(a), negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). After considering all of the relevant evidence, including the fact that petitioner admittedly deducted expenses that he incurred on behalf of European investors for which he expected to be reimbursed, we hold that petitioner has failed to prove that he is not subject to the addition to tax for negligence. *707 To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. According to petitioner, he believed that the consents were limited in scope and applied only to the issue of whether he was a partner of Wheatley. ↩
3. See, e.g., Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983) (holding consent invalid if altered by respondent after being signed by taxpayer); Cary v. Commissioner,48 T.C. 754, 764-766 (1967) (holding consent invalid if altered by respondent after being signed by taxpayer); Schwotzer v. Commissioner,T.C. Memo. 1986-161↩ (holding consent invalid when its terms were physically altered by taxpayer without respondent's knowledge).
4. Taxpayers who wish to consent to an extended period for assessment yet retain a right of revocation may do so by executing a Form 872-A, which contains specific provisions as to termination by either party.↩
5. We recognize that we are not required to accept testimony at face value, nor that which we consider to be inherently improbable. Urban Redevelopment Corp. v. Commissioner,294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960); Archer v. Commissioner,227 F.2d 270, 273↩ (5th Cir. 1955), affg. a Memorandum Opinion of this Court. 6. To the extent substantiation is an issue, we have considered the provisions of sec. 1.274-5(c)(5), Income Tax Regs.↩, which allow petitioner to reconstruct his records if they are lost through a casualty beyond his control.
7. Although petitioner argues that he has not yet been reimbursed for the expenses, he admitted that he has negotiated a settlement with the Europeans. The settlement agreement specifies that the Europeans have agreed to pay petitioner $ 85,000 in settlement of all claims he has against them for his services and expenses. If petitioner incurred reimbursement expenses on behalf of the European investors in excess of the amount that he ultimately collects from them, his recourse is to deduct the excess expenses as a bad debt. Flower v. Commissioner,61 T.C. 140, 152 (1973), affd. without published opinion 505 F.2d 1302↩ (5th Cir. 1974).
8. If a gift qualifies for deduction under section 162(a), section 274 may limit the amount of the deduction allowable. Section 274(b) prohibits the deduction of gifts to the extent that the expense for gifts given to any individual exceeds $ 25, and section 274(d) requires gift expenses to be adequately substantiated. Section 1.274-5(b)(5)↩ requires adequate substantiation to include, inter alia, a description of the gift and an explanation of the business relationship between the donor and the donee. 9. An asset may not be depreciated below a reasonable salvage value under either method. Sec. 1.167(b)-2(a), Income Tax Regs.; sec. 1.167(a)-1(c)(1), Income Tax Regs.↩
10. In computing petitioner's allowable depreciation, infra,↩ we have reduced the salvage value by $ 810, 10 percent of the basis of the Blazer. See sec. 167(f)(1). 11. Petitioner testified that the amount deducted for the Watergate Health Club, which was half of an annual membership fee, represented the business use of the club by his clients. In concluding that petitioner had failed to prove that the expense is deductible, we consider it significant that petitioner failed to name a single client who had made use of the club, or introduce any evidence whatsoever that the proportion of the expense that he deducted represented the proportion of the use of the club that was client use. ↩
12. Rule 151(e). See Strasser v. Commissioner,T.C. Memo 1986-579↩ (holding issue conceded when not considered on brief).