REVERE COPPER & BRASS, Inc., et al. v. UNITED STATES.

No. M—274.

Court of Claims.
April 10, 1933.

158

Percy W. Phillips, Richard B. Barker, and Brewster, Ivins & Phillips, all of Washington, D. C., for plaintiffs.

George H. Foster, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before LITTLETON, WHALEY, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

Plaintiffs contend that the credit of $20,116.89 of the overpayment for 1917 in May, 1926, against taxes admittedly due for the years 1911 to 1916, inclusive, was void for the reason, first, that the tax for these years was assessed after the expiration of the period of limitation for assessment inasmuch as the limitation properly applicable to the years 1911 to 1916 had expired before the assessments were made in May, 1926; second, that the waiver of November 13, 1922, did not grant an unlimited time within which to make assessments; third, that the waiver expired as to 1911 to 1916, inclusive, on April 1, 1924; that, if the ruling of the Commissioner did not terminate the waiver as to these years on April 1, 1924, it served to extend the period for assessment for only a reasonable time after the date of its execution and the assessment was not made until after the expiration of such reasonable time; and, fourth, that there was no authority in law for the Commissioner to credit any portion of the 1917 overpayments against taxes due for 1911 and 1912, inasmuch as tax for these years was not as income but excise tax and the provisions of law authorizing credits provide only for the crediting of income or excess-profits taxes.

We are of opinion that the claims advanced by plaintiffs cannot be sustained.

It must be admitted that except for the consent in writing executed by the parties November 13, 1922, the Commissioner would have had no right to assess the taxes for 1911 to 1916, inclusive, nor to credit any portion of the 1917 overpayment thereto. It seems from the facts that the amended returns showing additional taxes due for 1911 to 1916, inclusive, and the waiver were executed and filed in connection with some adjustments claimed by the taxpayer for 1917, inasmuch as the amended returns for 1911 to 1916, inclusive, were prepared and executed at the same time as the amended return for 1917, claiming a large overpayment, was executed and filed. Just what effect those adjustments had does not appear and, as we view the case, it is immaterial.

Prior to the execution of the consent on November 13, 1922, the Commissioner was without authority to assess or collect by credit or otherwise the additional taxes and interest due for 1911 to 1916, inclusive. It appears that upon execution of the waiver the Commissioner proceeded with his consideration and audit of the tax liability for the years 1911 to 1922, inclusive, and in May, 1926, assessed the additional taxes shown to be due by the amended returns for the years 1911 to 1916, inclusive, and certain interest thereon. The question, therefore, as to whether or not the Commissioner acted within a reasonable time applies only to the assessment inasmuch as the revenue act in force at the time the assessment was made gave the Commissioner six years within which to collect. Before determining whether the Commissioner acted within a reasonable time in making the assessment we will consider the question whether the waiver expired on April 1, 1924. We think it did not. The ruling by the Commissioner fixing April

1, 1924, as the date on which unlimited waivers for 1917 would expire by its plain terms related only to the year 1917 and may not be construed as affecting unlimited waivers executed with respect to other years. Nor is the question affected by the fact that waiver for 1911 to 1916, inclusive, also included the year 1917. A single waiver including several years is a separate waiver for each year within the contemplation of the statute and the contemplation of the parties. The question whether an unlimited waiver for any year except 1917 expired on April 1, 1924, under the Commissioner's ruling has been, we think, correctly disposed of by the Circuit Court of Appeals for the Second Circuit in Greylock Mills v. Commissioner of Internal Revenue, 31 F.(2d) 655, 657, in which it was said: "The ruling clearly relates exclusively to waivers as to 1917 taxes. The appellant's waiver was in legal effect a separate waiver as to taxes for each of the years therein mentioned. The argument that, because these separate waivers were incorporated in a single memorandum, all were affected by the ruling which affected one, is so transparently without merit that we mention it merely to indicate it has not been overlooked."

In contending that the Commissioner did not assess the taxes for 1911 to 1916, inclusive, within a reasonable time, the plaintiffs state that "where there is an indefinite period, no greater time should be allowed to assess an admitted liability than is allowed by statute to the Commissioner to discover additional taxes by his own efforts. Congress had given five years in which to assess additional taxes for 1917 and prior years. Surely five years was adequate in which to assess the additional taxes shown upon the amended returns, filed in 1919. On no basis can it be said that a reasonable time to assess these additional taxes extended beyond 1924. If the waiver was not void, but was effective to extend the statutory period for assessment for a reasonable time, it had expired long before the assessment was made in May 1926." The position thus taken by the plaintiffs overlooks the fact that until November 13, 1922, the Commissioner had no authority to assess or collect the admitted additional taxes due for 1911 to 1916, inclusive, and that in determining whether the Commissioner acted within a reasonable time we must begin with the date on which the Commissioner could have acted, which, in this case, was November 13, 1922. He made the assessment in May, 1926, which was only three years and about five months after he was given the right to assess. On the facts in this case we think he acted within a reasonable time. It appears that he was engaged in auditing the tax liability for several years and it was not until some time in 1925 that he concluded his audit and determined the amount of overpayment for 1917 and the additional taxes for subsequent years. Loeser v. Commissioner of Internal Revenue, —— B. T. A. ——, decided January 31, 1933.

We are of opinion that the last point made by the plaintiffs cannot be sustained. It is that section 284 of the Revenue Act of 1926 (26 USCA § 1065 and note), in effect at the time the credit in this case was made, which, for all intents and purposes, was the same as the provision in section 252 of the Revenue Acts of 1918 and 1921 (40 Stat. 1085, and 42 Stat. 268), prohibits the credit of any income or profits tax against the tax imposed by the act of 1909. A consideration of the various sections of the Revenue Acts providing for credits leads us to the conclusion that the word "income" in provisions directing the refund or credit of any "amount of income, war-profits or excess-profits tax," included the taxes due under the act of August 5, 1909 (36 Stat. 11). This view is strengthened by the language of section 252 of the Revenue Act of 1918 (40 Stat. 1085), which, in substance, has been carried into all the subsequent acts, and which provides that if, upon the examination of any return made pursuant to the act of August 5, 1909, "it appears that an amount of income, war-profits or excess-profits tax has been paid in excess of that properly due, then, * * * the amount of the excess shall be credited against any income, war-profits or excess-profits taxes, or installment thereof, then due from the taxpayer under any other return, and any balance of such excess shall be immediately refunded to the taxpayer." This language shows clearly, we think, that the statute authorized a credit against taxes due under the act of 1909. The crediting of a portion of the 1917 overpayment against taxes, due for 1911 and 1912 was therefore legal and proper.

Upon the foregoing reasons it is the judgment of the court that the petition be dismissed. It is so ordered.

BOOTH, C. J., took no part in the decision of this case on account of illness.