WILLIAM C. AND MARGUERITE PIARULLE, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9467–81.    Filed May 19, 1983.

*William J. Neild,* for the petitioners.
*George W. Connelly, Jr.,* for the respondent.

COHEN, *Judge*: By statutory notice dated March 27, 1981,
respondent determined the following deficiencies in petition-
ers' Federal income taxes:

| Year | Deficiency |
|------|------------|
| 1974 | $19,734 |
| 1975 | 15,330 |
| 1976 | 8,811 |
| 1977 | 7,158 |

Pursuant to a Joint Motion for Separate Trial granted
November 1, 1982, the only issues presently before the Court

---

involve the statute of limitations for the taxable years 1974 and 1975. The issues for determination are: (1) Whether, after a multiyear Form 872, Consent to Extend the Time to Assess Tax, had been executed by petitioners, respondent's striking of the reference to one of the taxable years rendered the consent invalid as to the remaining taxable years, and (2) whether petitioners are estopped from asserting the invalidity of the consent.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners William C. and Marguerite Piarulle, husband and wife, resided in Rochester, N.Y., at the time their petition in this case was filed. Petitioners timely filed joint Federal income tax returns for the taxable years 1974, 1975, 1976, and 1977 with the Internal Revenue Service Center, Andover, Mass.

On or about June 29, 1974, William C. Piarulle (Dr. Piarulle) and two joint venturers entered into a series of agreements with Oaklawn Farms, Inc. (Oaklawn).[1] Dr. Piarulle's pro rata share of receipts, deductions, and credits from that joint venture was reported by petitioners on Schedule F, Form 1040, for their taxable years 1974, 1975, 1976, and 1977.

Dr. Piarulle, as a joint venturer, entered into another series of agreements with Oaklawn in August of 1975. Petitioners reported Dr. Piarulle's pro rata share of receipts, deductions, and credits from that joint venture on Schedule F, Form 1040, for their taxable years 1975, 1976, and 1977.

On or about December 30, 1976, Dr. Piarulle and three joint venturers purchased a limited partnership interest in Hawk Mining Co., Ltd. (Hawk). Petitioners reported Dr. Piarulle's pro rata share of the net losses claimed by Hawk on Schedule E, Form 1040, for their 1976 and 1977 taxable years.

---

[1]This corporation is also referred to in the exhibits as Oak Lawn Farms and Oak Lawn Foods.

The dates at which the normal 3-year period of assessment of a deficiency expired, pursuant to section 6501(a),[2] for the taxable years at issue are as follows:

| Taxable year | Due date Apr. 15— | Statute of limitations Apr. 15— |
|---|---|---|
| 1974 | 1975 | 1978 |
| 1975 | 1976 | 1979 |
| 1976 | 1977 | 1980 |
| 1977 | 1978 | 1981 |

Petitioners' 1974 return was initially selected for examination on or before September 1, 1975. The issues examined included deductions claimed with respect to Dr. Piarulle's transactions with Oaklawn. The Buffalo Examination Division of the Internal Revenue Service (the Service) issued a 30-day letter to petitioners with respect to the Oaklawn issue on February 5, 1976. Each of petitioners' returns at issue herein was prepared by the C.P.A. firm of Goldstein and Viele. On February 27, 1976, Edmund Viele, C.P.A., of Goldstein and Viele, submitted to respondent a protest to that 30-day letter on behalf of petitioners. At the time that Protest was submitted, an examination of Oaklawn was proceeding in another Internal Revenue District, and petitioners' 1974 return was placed in a "Suspense" file.

Petitioners' 1975 return was initially selected for examination on or about September 7, 1977. The issues examined included deductions claimed with respect to Dr. Piarulle's transactions with Oaklawn. Petitioners did not agree to the revenue agent's proposed adjustments relative to Oaklawn, and their 1975 return was similarly placed in a "Suspense" file.

In a letter to the Chief of Audit Review dated October 26, 1977, Mr. Viele noted that it had been at least 12 months since the start of the initial audit of petitioners' 1974 return and asked for a reply regarding the cause of the delay. The District Director notified Mr. Viele that he would reply to that letter directly to the petitioners because the Service had no record that petitioners granted authorization for Mr. Viele to receive such information. By letter dated December 6, 1977, the

---

[2]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years here in issue.

District Director informed petitioners that the tax matters pertaining to Oaklawn were the only remaining items at issue on their 1974 return, that these tax matters were still under study by the Service's National Office, and that the approximate completion date of such study could not be estimated.

In a letter dated February 14, 1978, the District Director asked petitioners to sign a Form 872, Consent Fixing Period of Limitation Upon Assessment of Tax, for 1974. As typed by the Service, that form provided that tax may be assessed at any time on or before June 30, 1979. Petitioners changed the "9" in "1979" to an "8" (thereby indicating "1978") and executed the form on February 24, 1978. The District Director notified petitioners that this Form 872 was unacceptable because petitioners had not initialed the altered date and asked them to execute a new Form 872 extending the assessment period for 1974 to December 31, 1978. The new Form 872 included a typed restriction that limited its coverage to adjustments related to Oaklawn. Petitioners executed that new Form 872 on March 28, 1978.

On November 29, 1978, petitioners executed another Form 872 extending to December 31, 1979, the period for assessment for their 1974 and 1975 taxable years. This form also included a typed restriction limiting its coverage to adjustments related to Oaklawn.

In a letter dated October 29, 1979, the District Director again asked petitioners to further extend the period for assessment for 1974 and 1975. The letter stated that the tax matters pertaining to Oaklawn were still under consideration by the National Office and that the date when the examination of petitioners' returns could be resumed could not be estimated at that time. Petitioners executed a Form 872 on November 20, 1979, extending the period for assessment for 1974 and 1975 to December 31, 1980. This form included the same restriction as on the previous forms limiting the coverage to Oaklawn adjustments.

On October 6, 1980, Revenue Agent James Stockton telephoned Dr. Piarulle and asked for further extensions for 1974 and 1975. Dr. Piarulle indicated his preference to have Mr. Viele handle the matter. Mr. Viele telephoned Mr. Stockton the same day and stated that he would not recommend that

petitioners sign any further extensions; however, he did agree to meet with Mr. Stockton.

Mr. Stockton met with Mr. Viele and Dr. Piarulle on October 23, 1980. The issues discussed included Oaklawn and Hawk. Dr. Piarulle refused to extend the period for assessment for 1974 and 1975, but the parties did agree to have Mr. Viele meet with Mr. Stockton and Dominic Pardi, Mr. Stockton's supervisor. Dr. Piarulle was at this time frustrated that the Service had not resolved the Oaklawn issue to petitioners' satisfaction and was reluctant to extend the period for assessment for a longer period than he considered appropriate.

Sometime after the October 23 meeting and before October 28, 1980, petitioners executed a Form 2848, Power of Attorney, appointing Mr. Viele as their attorney-in-fact for all matters regarding their 1974 and 1975 tax returns. Mr. Viele met with Mr. Stockton and Mr. Pardi on October 28, 1980, but the parties were still unable to reach a settlement on the Oaklawn issues for 1974 and 1975. Mr. Viele agreed, however, to recommend to petitioners that they consent to extend the period for assessment for the taxable years 1974, 1975, and 1977.[3] Following this meeting, Mr. Stockton prepared and mailed a Form 872 to petitioners. The pertinent part of that form provided:

(1) The amount of any Federal ____Income____ tax due on any return(s)
                                   (Kind of Tax)
made by or for the above taxpayer(s) for the period(s) ended December 31, 1974, December 31, 1975 and December 31, 1977, may be assessed at any time on or before December 31, 1981. However, if a notice of deficiency in tax
                 (Expiration Date)
for any such period(s) is sent to the taxpayer(s) on or before that date, then the time for assessing the tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days.

     *   *   *   *   *   *   *

(3) The taxpayer(s) may file a claim for credit or refund and the Service may credit or refund the tax within 6 months after this agreement ends. The amount of any deficiency assessment is to be limited to that resulting from any adjustment to income, deduction, gain, loss or credit arising from transactions entered into with Oak Lawn Foods, Inc., including any

---

[3]Petitioners had previously executed in March of 1980 a Form 872 extending the period for assessment for their 1976 taxable year to Dec. 31, 1981.

consequential changes to other items based on such adjustments. (Oak Lawn Foods, Inc., is also known or referred to as Oak Lawn Farms, Inc.)

The provisions of section 6511(c), Internal Revenue Code of 1954, are limited to any refund or credit resulting from adjustment for which the period for assessment is extended under this agreement.

[The portions inserted by preparer are indicated by underscoring.]

After receiving the Form 872 prepared by Mr. Stockton, petitioners crossed out the expiration date of December 31, 1981, and wrote "June 30, 1981" above that date. Petitioners placed their initials next to the modified date and then executed that form on November 3, 1980. Mr. Stockton picked up the form from petitioners, noticed the change of date, indicated that such change was acceptable, and then personally delivered the modified form to John Heim, Chief of the Review Staff of the Buffalo District, the next day. Mr. Heim reviewed the Form 872 and respondent's files regarding petitioners in Mr. Stockton's presence. Upon examination of petitioners' 1977 return, Mr. Heim noted that a loss had been claimed with respect to Hawk on Schedule E, Form 1040. Mr. Heim recalled that Hawk was the subject of an open examination in respondent's Manhattan District Office, and noted that the restriction on the Form 872 as prepared by Mr. Stockton limited future assessments to issues relating to Oaklawn. Mr. Heim crossed out "December 31, 1977" on the part of the form for taxable periods, initialed this change, and then signed the form on behalf of respondent. Mr. Stockton asked Mr. Heim if he should obtain two new consents—one for 1974 and 1975, and one for 1977. Mr. Heim replied that only a new consent for 1977 was necessary.

On November 10, 1980, Mr. Stockton mailed to petitioners the Form 872 altered by Mr. Heim on November 4, a new Form 872 for the taxable year 1977, and a letter explaining that the restrictive language on the new Form 872 had been expanded to include issues relating to Hawk. Mr. Stockton did not send copies of this letter or the forms to Mr. Viele, and no attempt was made to inform Mr. Viele of the changes made to the Form 872 signed by Mr. Heim on November 4.

On or about November 13, 1980, Dr. Piarulle telephoned Mr. Stockton. Dr. Piarulle was extremely upset, stated that it was a "rotten thing" to change the Form 872, and asked how respondent could change a document after it had been agreed to by both sides. He told Mr. Stockton that he would not sign

the new consent. Petitioners did not execute the new Form 872 for 1977, and neither petitioners nor Mr. Viele had any further communications with the Service prior to the statutory notice of deficiency issued March 27, 1981.

## OPINION

The parties agreed in writing to extend the period for assessment for petitioners' 1974 and 1975 taxable years to December 31, 1980. Respondent, however, did not issue a statutory notice of deficiency for 1974 and 1975 until March 27, 1981. The pertinent parts of section 6501 provide:

SEC. 6501(a). GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed *within 3 years after the return was filed* (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

        *        *        *        *        *        *        *

(c) EXCEPTIONS.—

        *        *        *        *        *        *        *

    (4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by *subsequent agreements in writing* made before the expiration of the period previously agreed upon.
[Emphasis supplied.]

Assessment against petitioners with respect to 1974 and 1975 is therefore barred unless: (1) The parties validly agreed to extend the period for assessment beyond the date the notice was issued, or (2) the petitioners are estopped to deny the validity of such an agreement.

## I. The Validity of the "Agreement"

Respondent argues that the Form 872 executed by petitioners on November 3, 1980, was not part of a "package deal" covering the taxable years 1974, 1975, and 1977; that the consent was the equivalent of three separate waivers; and that

the deletion of the reference to 1977 in that form had no effect on the validity of the waiver for 1974 and 1975. Respondent further contends that a multiyear consent is similar to a severable or divisible contract, and if the alteration to that form were material, the materiality would be limited to the 1977 tax year.

A consent to extend the period for assessment of an income tax is essentially a unilateral waiver of a defense by the taxpayer and is not a contract. *Strange v. United States*, 282 U.S. 270 (1931); *Tallal v. Commissioner*, 77 T.C. 1291 (1981). Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement as to the extension. The term "agreement" means a manifestation of mutual assent. S. Williston, Contracts 6 (3d ed. 1957).

The Form 872 prepared by respondent and executed by petitioners November 3, 1980, provided that the period for assessment for taxable years 1974, 1975, and 1977 would be extended only for issues related to Oaklawn. Respondent crossed out the reference to 1977 and now seeks to enforce the "agreement" for 1974 and 1975. Dr. Piarulle was at this time frustrated that the Oaklawn issue had not been resolved earlier and was reluctant to consent to a further extension for 1974 and 1975. Petitioners signed the consent upon the advice of their accountant only when it was thought that they were obtaining something with respect to 1977. In signing the Form 872, petitioners were led to believe that only Oaklawn issues would be raised for 1974, 1975, and 1977. Respondent, with ample time to take any one of several actions that would give petitioners notice of, and a chance to decide whether to accept, respondent's alterations, decided instead to change a previously executed consent and impose new terms upon petitioners, without notifying the representative who had negotiated the combined consent.

Respondent cites *Greylock Mills v. Commissioner*, 31 F.2d 655 (2d Cir. 1929), cert. denied 280 U.S. 566 (1929), and *Revere Copper & Brass v. United States*, 77 Ct. Cl. 456, 3 F. Supp. 157 (1933), for the principle that a single waiver that covers more than 1 taxable year is, in legal effect, a separate waiver as to taxes for each of the years therein mentioned. In each of these cases, the taxpayer executed and the Service accepted a single document extending the period of assessment for multiple

taxable years, including 1917. Under prior law, the duration of these consents was for an indefinite period of time. Thereafter, the Commissioner issued a ruling providing that all consents in effect for the taxable year 1917 would expire on April 1, 1924. The taxpayers argued that because the consent for 1917 expired on April 1, 1924, the consent for each of the taxable years in the same document must also expire on that date. In both of these cases, the Court held that the waiver remained valid as to taxable years other than 1917. The reasoning of the Courts was summed up in *Revere* as follows: "A single waiver including several years is a separate waiver for each year within the contemplation of the statute and *the contemplation of the parties*." (Emphasis supplied.) *Revere Copper & Brass v. United States, supra* at 160.

*Greylock* and *Revere* are distinguishable from the case at issue. In each of these cases, the consent had already been executed by the taxpayer and accepted by the Service, and there was no indication at the time the consents were executed that the parties contemplated a package deal. In this case, the Form 872 executed by petitioners had not been accepted by the Service at the time it was altered, and the facts justify the conclusion that the petitioners did contemplate a package deal.

In *Cary v. Commissioner*, 48 T.C. 754 (1967), we held that a Form 872 signed by the taxpayer, but altered by an employee of the Service without the taxpayer's consent before it was accepted by the Service, was invalid. Respondent seeks to distinguish *Cary* on the basis that the Form 872 in that case referred to only 1 taxable year. This difference is immaterial. As we stated in *Cary v. Commissioner, supra* at 766:

The same physical document, a Form 872, was signed by the petitioner and on behalf of the respondent but the document as signed by petitioner had been changed before being signed on behalf of the respondent. Such a document did not constitute a consent in writing by both the taxpayer and the Commissioner.

An agreement that incorporates 3 taxable years is materially different from one that incorporates only 2 of those years; at the time it was executed by petitioners, the Form 872 was materially different than when it was "accepted" by respondent. Petitioners and respondent did not have a manifestation

of mutual assent, and no written agreement was reached as required by section 6501(c)(4).

The consent was a written document prepared by respondent. Nothing on the face of the consent stated that respondent may selectively choose, after the consent is executed by petitioners, to accept the consent for certain years and not for other years. (Had petitioners executed a separate Form 872 for each year involved, we would have a different case, and we express no opinion here as to the result in such a case.)

Simply put, petitioners executed one instrument and respondent seeks to enforce a different instrument against them. We hold that the Form 872 executed by petitioners on November 3, 1980, and thereafter altered by respondent's agent is invalid and does not operate to extend the period of assessment for 1974, 1975, or 1977.

## II. Estoppel

A taxpayer may be estopped to deny the validity of an agreement to extend the period of limitations where the Government reasonably relies upon waivers executed by the taxpayer. *Benoit v. Commissioner*, 25 T.C. 656 (1955), affd. 238 F.2d 485 (1st Cir. 1956). The circumstances required for equitable estoppel to apply are:

(1) there must be false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed. [*Lignos v. United States*, 439 F.2d 1365, 1368 (2d Cir. 1971).]

Respondent contends that he reasonably relied on the validity of the consent; that petitioners were under a duty to advise respondent that they believed the consent to be invalid; that petitioners failed to so advise respondent; and that this failure to advise constituted wrongful misleading silence on the part of the petitioners.

Respondent's argument that he reasonably relied on the validity of the consent for 1974 and 1975, however, is not supported by the facts. It was respondent's own employee who materially altered the Form 872. When Mr. Heim crossed out the reference to 1977 on that form, he was asked by Mr. Stockton if it was necessary to prepare two new forms—one for

1974 and 1975, and one for 1977. Mr. Heim had the opportunity to seek petitioners' consent to the change in the form or to seek the advice of legal counsel as to the effect of altering the form, but he chose to assume that the altered form was valid. Under these circumstances, we find that any reliance was not reasonable and was not the result of any conduct of petitioners.

Respondent's argument that petitioners' actions constituted wrongful misleading silence is equally without merit. After that form was altered by Mr. Heim, Revenue Agent Stockton sent the form directly to petitioners. Mr. Stockton did not send a copy of the form to petitioners' accountant, Mr. Viele, even though a valid Form 2848, Power of Attorney, appointing Mr. Viele as petitioners' attorney-in-fact had previously been filed with respondent. In fact, no attempt was made to inform Mr. Viele of the changes made to the Form 872. Mr. Stockton testified that no information was sent to Mr. Viele because the power of attorney only covered 1974 and 1975. This argument is inconsistent, however, with respondent's contention that after the alteration, the Form 872 was only valid for 1974 and 1975. It is more likely that Mr. Stockton either forgot to send copies of the correspondence to Mr. Viele, or deliberately bypassed Mr. Viele because Mr. Viele knew that Hawk was part of the package to which Mr. Stockton had agreed. In either case, no wrong may be attributed to petitioners.

Shortly after receiving the altered Form 872, Dr. Piarulle telephoned respondent and spoke with Mr. Stockton and Mr. Pardi. Dr. Piarulle stated that it was a "rotten thing" for respondent to alter the form and that he would not sign the new Form 872 for 1977. Respondent argues that Dr. Piarulle did not specifically mention the taxable years 1974 and 1975, and therefore no notice was given that the consent was repudiated for those years. Respondent was aware, however, that Dr. Piarulle was extremely upset about the alteration of the form and that he desired the examinations of 1974 and 1975 to be concluded as soon as possible. Petitioners' 1974 return had been selected for examination more than 4 years earlier, and Dr. Piarulle initially refused to consent to extend further the period for assessment on October 23, 1980. When petitioners did decide to execute the Form 872 on November 3,

1980, they shortened the extension date from December 31, 1981, to June 30, 1981.

In *Cary v. Commissioner, supra*, the Service prepared a Form 872 that contained an erroneous reference to the taxable year involved. It was apparent that the Service intended the extension year to be 1957, but the Service inadvertently inserted "6–30–62" as the date to which the period for assessment was to be extended. The taxpayer, his accountant, and his attorney were aware of this mistake before the taxpayer executed the form and sent it to the Service. No action was taken to inform the Service of their mistake. Thereafter, someone in the Service's employ altered the Form 872 by striking through "6–30–62" and inserting "12–31–57." This alteration was made at least 15 days prior to the expiration of the period for assessment. A copy of the altered Form 872 was sent to the taxpayer's accountant, and no effort was made to inform the Service of any objection to the validity of the Form 872. In discussing a taxpayer's duty to advise the Service we stated:

> Here the facts show that petitioner on the advice of his accountant concurred in by his attorney deliberately sent a document to the Internal Revenue Service which he and his representatives knew contained an error which he and his representatives considered material. Neither petitioner nor his representatives directed the attention of the Internal Revenue Service to the error in the instrument. Had no change been made in the instrument in the Internal Revenue Service, these facts might justify the conclusion that petitioner was estopped to deny that the document he submitted to the Internal Revenue Service was an extension of the statute of limitations on assessment for the year 1957 because of petitioner's misleading the respondent to respondent's detriment. However under the facts of the present case we are not required to decide such an issue. It is clear from the evidence here that the error in the Form 872 was not overlooked by respondent. Not only was the error noticed but the instrument was changed by respondent's employee after petitioner had signed the instrument without any consultation with petitioner or his representatives in an attempt to obtain their agreement to the change or a new instrument with the right date inserted in the appropriate blank space. * * * At the time this document was altered in the Internal Revenue Service and signed on behalf of the Commissioner, there still remained at least 15 days to obtain a proper Form 872 extending the statute of limitations on assessment for the year 1957.
>
> Under these circumstances it can hardly be said that the Commissioner was misled by petitioner. In this case respondent is relying on a document which was altered by his agents or employees without the consent of petitioner. * * * [*Cary v. Commissioner, supra* at 765–766.]

In summary, the Form 872 was altered by respondent's own employee; no information regarding the altered form was sent to petitioners' attorney-in-fact; Dr. Piarulle informed respondent of his strong objection to the alteration in the form; and respondent was aware that petitioners wanted to conclude the examinations of 1974 and 1975 as soon as possible. Based on these facts, it cannot be said that respondent was misled by petitioners' silence.

In this case as in *Cary*, respondent seeks to rely on a document that was altered by one of his employees without the consent of petitioners at a time when sufficient time remained to obtain a proper Form 872. Respondent's error was one of law (i.e., assuming that the altered Form 872 was valid as to 1974 and 1975), not one of fact. All of the facts were known to respondent. In these circumstances, it is unreasonable to say that the situation was created by petitioners and that they are therefore precluded from relying upon limitations provisions that are otherwise applicable, particularly when respondent could have prevented the expiration of the limitations periods by obtaining new consents or by issuing statutory notices of deficiency on a timely basis. See *Atlas Oil & Refining Corp. v. Commissioner*, 22 T.C. 552 (1954).

Accordingly,

*An appropriate order will be issued.*