CALVIN KOVENS AND ROZ M. KOVENS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5435-82.          Filed March 17, 1988.

---

*Harvey M. Silets, Steven S. Brown,* and *Royal B. Martin, Jr.,* for the petitioners.

*Thomas R. Ascher,* for the respondent.

GERBER, *Judge:* The parties in this case requested us to consider a bifurcated procedural issue concerning the statute of limitations which would be dispositive of the taxable years in issue if decided in petitioners' favor.[1] The issue concerns interpretation of the Form 872-A agreement to extend the period within which respondent can assess and collect tax. Petitioners contend that respondent "breached" the terms of the Form 872-A by failing to provide Form 872-T to petitioners. A Form 872-T was the sole means by which petitioners could terminate the effect of the Form 872-A agreement. Petitioners further contend that respondent's "breach" should permit petitioners to activate the termination provisions of the 872-A agreement when they "irrevocably demonstrated an intent to terminate," rather than upon respondent's receipt of Form 872-T, as provided in the Form 872-A agreement.

## FINDINGS OF FACT

The record consists of testimony and stipulations of facts, along with attached exhibits which are incorporated by this reference. Petitioners[2] filed Federal income tax returns (Forms 1040) for the taxable years 1971, 1972, 1973, 1974, 1976, 1977, and 1978 with the Internal Revenue Service on April 17, 1972, June 15, 1973, July 18, 1974, September 19, 1975, October 19, 1977, October 19, 1978, and October 17, 1979, respectively. On March 17, 1980, a Special Consent to Extend the Time to Assess Tax (Form 872-A) was timely executed[3] for petitioners' 1971 through 1978 taxable years.

---

[1] If, however, we decide this issue in respondent's favor, a separate trial on the substantive merits may be necessary if unresolved by settlement. We agreed to a bifurcation of this procedural issue because it could have been dispositive of the entire matter and because the substantive issues cover 7 taxable years and numerous complex factual and legal issues. The issue is raised by means of petitioners' motion to dismiss for lack of jurisdiction based upon an illicitly untimely notice of deficiency.

[2] Petitioners resided in Miami, Florida, at the time the petition in this case was filed.

[3] Petitioners had executed the Form 872-A on an earlier date and submitted it to respondent's agents. The execution on behalf of respondent occurred on or about Mar. 17, 1980.

The Form 872-A contains, in pertinent part, the following terms:

(1) The amount(s) of any Federal income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) [herein involved] * * * may be assessed on or before the (90) ninetieth day after: (a) The Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872-T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such period(s). * * *

Frank Egger (Egger), a certified public accountant, was employed, beginning September 1980, as a full-time financial consultant to petitioner Calvin Kovens. Egger was previously employed at Peat, Marwick, Mitchell & Co. and Coopers & Lybrand. Egger represented petitioners during the audit process of the taxable years in issue and had authority, which he exercised on occasion, to extend the period for assessment. Jack Cooney, an accountant with Coopers & Lybrand, and Egger were both named on a power of attorney from petitioners, but Egger conducted conferences and was the principal representative of petitioners before the Internal Revenue Service. Respondent's revenue agent issued his report and a protest was prepared and submitted by Egger on behalf of petitioners. Whereafter, petitioners' case was assigned to Lamar Adcock (Adcock), an appeals officer.

As of their final conference on October 20, 1981, Egger and Adcock had met four times and engaged in numerous telephone conversations, all of which resulted in agreement on some of the issues and disagreement on others. Egger was advised at the October 20, 1981, conference that Adcock intended to retire at the end of 1981 and Egger understood that the Internal Revenue Service was to issue a notice of deficiency to petitioners for the years under consideration. Egger advised Adcock that Egger desired the notice of deficiency be issued before Adcock retired to avert the possibility of new issues being raised. Egger inquired of Adcock whether it was necessary for petitioners to terminate the Form 872-A, and Adcock advised that a notice would be issued before his retirement.

Petitioners, prior to or during the administrative consideration of the 1971 through 1978 taxable years, had filed a petition with this Court concerning earlier years and that case was set on a trial calendar for January 1982. Following the October 20, 1981, appeals conference, Egger met with Jack Cooney and Harvey Silets, tax counsel for petitioners. Concern was expressed that respondent's agents or attorneys might attempt to raise one of the issues already pending in the docketed case in the 1971 through 1978 years that were administratively pending with Adcock. Following his meeting with petitioners' other representatives, Egger decided that he should terminate the Form 872-A agreement for the 1971 through 1978 taxable years and force the issuance of a notice of deficiency.[4]

Thereafter, Egger sought to obtain the Form 872-T in order to terminate the 872-A agreement. Egger was unable to find a Form 872-T in his Package X.[5] There being no forms distribution center in Florida, Egger called the Jacksonville District Office of Internal Revenue Service and was connected with the Atlanta Forms Distribution Center located in the Atlanta Service Center. He requested a Form 872-T and was told that one would be mailed to him. About 1 week following the October 20, 1981, meeting with Adcock, Egger returned to the Appeals Office to provide an affidavit to Adcock. At that time, Egger requested a Form 872-T from the Appeals receptionist who, in turn, referred him to the Taxpayer Assistance Office on another floor in the same building. The clerk at Taxpayer Assistance was unable to find a Form 872-T and advised that the form would be ordered from Jacksonville and that it would be received in about 3 or 4 weeks. Egger also went to the office of Coopers & Lybrand and was unable to obtain the form there. Petitioners' representatives did not request a Form 872-T from Adcock.

Egger did not receive a Form 872-T from Atlanta so he again called Jacksonville and spoke with supervisory per-

[4]The concern about new issues likely to be raised relates to the principle that petitioners would generally bear the burden of proof if the issue is set forth in the notice of deficiency, whereas respondent would bear the burden of proof if the issue is raised after the case is petitioned. This distinction may have been sufficient to deter respondent from raising the issue in the 1971 through 1978 taxable years, if not raised in the notice of deficiency.

[5]Our understanding of the Package X is that it is distributed by IRS to tax practitioners as representative of the forms commonly needed during the return filing season.

sonnel and Taxpayers Assistance who were unable to provide the requested form. Egger then called Jack Cooney of Coopers & Lybrand who agreed to secure the form. Approximately 2 days later Mr. Cooney hand carried a photocopy of Form 872-T to Egger. Petitioners signed the photocopied Form 872-T on November 3, 1981, and it was mailed on November 5, 1981, and received on November 9, 1981, by the Miami Appeals Office. The 2-day delay in mailing occurred because Egger requested Mr. Cooney to send a photocopy of the back of the Form 872-T which contained instructions.

Respondent mailed a notice of deficiency determining income tax deficiencies totaling $6,377,463.72 to petitioners on February 4, 1982. Approximately 1 year later, Egger and Attorney Silets called the Atlanta Forms Distribution Center and requested a Form 872-T. About 2 weeks after the request, Egger received a form response with a box checked stating "internal use only. Information copies may be obtained from your local Internal Revenue Service Freedom of Information Office."

During development of this issue for trial, respondent's counsel inquired of internal sources about the availability of Form 872-T and received mixed responses. The first response received by respondent's counsel was that the form's distribution was limited and that taxpayers could obtain it only from Freedom of Information Offices of Internal Revenue Service. A subsequent response to respondent's counsel indicated that the form was available for general distribution to the public. Petitioners' representatives also tried to determine the then-current stated policy of the Internal Revenue Service concerning the Form 872-T. Approximately 1 week before the trial of this matter, Egger telephoned the Richmond, Virginia, Internal Revenue Service Forms Distribution Center[6] to place an order for the Form 872-T and was told by the telephone order clerk that the form was an internal use form that was listed in a computer printout of internal use forms and that Egger would have to visit the local District Director's Office to obtain the form. During a second telephone call to the same

---

[6]The center for Florida had been changed from Atlanta, Georgia, to Richmond, Virginia, between 1981 and 1987.

clerk, Egger and Attorney Silets were given the same advice about the internal use of the form. Petitioners' representatives then requested a copy of the catalog or list of internal use documents and this request was refused. Petitioners' representatives also spoke by telephone with a supervisor in the same office and received similar responses.

As of October 31, 1980, the Internal Revenue Service maintained a catalog (Publication 676) of Federal Tax Return Forms and Related Forms. The catalog is broken into two parts: "Part I - A list of Federal tax forms and related forms which the taxpayer may need to originate an internal revenue tax matter," and "Part II - A list of forms, form letters, notices, etc., used by the Internal Revenue Service to communicate with the public on tax-related matters." The Form 872-T was listed in Part II. The Internal Revenue Manual, section 4541.8, in effect during the period in question, contained provisions to advise taxpayers, in writing, where to obtain a Form 872-T at the time the executed Form 872-A was received back by the Internal Revenue Service. Procedural regulations provide that taxpayers can request, either in writing or by telephone, forms for all Internal Revenue matters from either the District Director or Service Center. Treas. Regs. sec. 601.602.

OPINION

The factual pattern in this case is relatively simple. Petitioners, under the Form 872-A agreement, were required to use Form 872-T to terminate the agreement and begin the running of a 90-day period within which respondent would be able to issue a notice of deficiency. Petitioners made diligent efforts to obtain a Form 872-T and were unable to obtain one from the Internal Revenue Service. Following about 2 weeks of delay, petitioners obtained a photocopy of a Form 872-T which they mailed to the proper office to effectuate termination of the Form 872-A agreement. Respondent has treated the photocopy as effective for purposes of termination.[7] Petitioners argue that the unavailability of the Form 872-T was caused by the intentional or

---

[7]In other words, respondent did not require that the termination could be effected only by means of an "official" or "original" of the Form 872-T.

negligent acts of respondent's office and that principles of contract law would provide that the prejudice allegedly caused by this delay should be remedied by permitting petitioners' Form 872-T to take effect as of the date of mailing rather than upon receipt by respondent, as set forth in the Form 872-A. If we agree with petitioners, respondent's notice of deficiency would be untimely (beyond the 90-day period) and the period for assessment would have run so that petitioners would be found to have no deficiencies in income tax for the years in issue. For the following reasons we find that petitioners are not entitled to the extraordinary relief they seek.

A consent to extend the period for assessment is essentially a unilateral waiver of the taxpayer's defense and it is not a contract. *Stange v. United States*, 282 U.S. 270 (1931); *Piarulle v. Commissioner*, 80 T.C. 1035, 1042 (1983); *Roszkos v. Commissioner*, 87 T.C. 1255, 1261 (1986). "Contract principles are significant, however, because section 6501(c)(4) [I.R.C. 1954] requires that the parties reach a written agreement as to the extension. The term 'agreement' means a manifestation of mutual assent. S. Williston, Contracts 6 (3d ed. 1957)." *Piarulle v. Commissioner, supra* at 1042.

Here, petitioners ask us to ignore the literal language of the agreement requiring receipt of Form 872-T by respondent before termination of the Form 872-A agreement and commencement of the 90-day period within which respondent can issue a notice of deficiency. Petitioners do not attack the validity of the Form 872-A agreement or its relationship to section 6501(c)(4), I.R.C. 1954. See *McManus v. Commissioner*, 65 T.C. 197, 207 (1975), affd. 583 F.2d 443 (9th Cir. 1978); *Winn v. Commissioner*, 67 T.C. 499, 508 (1976), affd. in part, revd. in part 595 F.2d 1060 (5th Cir. 1979). Petitioners do, however, emphasize that the Form 872-A used in this case differed from prior versions in that prior versions permitted either party to terminate the agreement by a written communication; whereas the instant version limits the taxpayer to the use of a Form 872-T.[8]

---

[8]The Form 872-A requirement that taxpayers must use Form 872-T to terminate the Form 872-A agreement is likely the result of controversies over what constituted proper notice. See, for example, *Johnson v. Commissioner*, 68 T.C. 637 (1977).

Petitioners next turn to principles of contract law in their attempt to convince us to grant the extraordinary relief of treating their attempted termination effective when the Form 872-T was mailed, rather than received by respondent as required in the Form 872-A agreement. In a well-written brief, petitioners attempt construction of a syllogistic foundation upon which to seek the requested relief. The first premise advanced by petitioners is that there exists an "implied * * * promise [on respondent's part] not to hinder or prevent [petitioners'] * * * performance." Citing contract law textual material, petitioners next state that their performance (requirement of respondent's receipt of the Form 872-T) would be excused, because respondent breached his "implied promise" or contractual obligation (by not making freely available or providing the Form 872-T). Petitioners argue that this contractual principle would apply irrespective of whether respondent's "breach" was intentional or negligent. Petitioners' concluding analysis concerns the possible remedies that would be appropriate to address respondent's breach. Petitioners point out that excuse of any performance on their part would be anomalous in that the intent (to notify the other party of the termination of the agreement) of the Form 872-A agreement would not be carried out. After discussing several other approaches, petitioners suggest the remedy of treating petitioners' attempt to terminate as effective when they mailed the photocopied Form 872-T to respondent.[9]

In order to accept petitioners' analysis, we must find that respondent, in the context of this case, "breached" some obligation. We are unable to agree with this essential premise. We are unable to find that respondent intended to keep Forms 872-T from the public or these specific petitioners. We did find, however, that petitioners made diligent attempts to obtain the Form 872-T and that it was not

---

[9]Although petitioners' suggested solution would achieve their objectives and also potentially inform respondent of their intent, it does not insure actual notice of termination because of the possibility that the Form 872-T is improperly addressed or lost in the mail. In our recent consideration of a Form 872-A agreement, we held that respondent's attempt to mail a notice of deficiency to an incorrect address was sufficient to signal respondent's intent to terminate the Form 872-A agreement, but the effect of respondent's intent and attempt was activated by actual notice by the taxpayer. See *Roszkos v. Commissioner*, 87 T.C. 1255, 1260-1264 (1986), on appeal 9th Cir.

readily available.[10] That did not, in our view, result in a breach of respondent's obligation or duty, if one existed, because petitioners within a reasonable time were able to obtain a copy of the required form and respondent accepted it as effective. Even if respondent's actions had amounted to a "breach," we are not compelled to apply contract law to resolve the controversy, but only to look to such principles for guidance. *Piarulle v. Commissioner*, 80 T.C. 1035, 1042 (1983); *Roszkos v. Commissioner*, 87 T.C. 1255, 1261 (1986).

Our focus is upon the prejudice that may have occurred to petitioners by the unavailability of the form. Petitioners sought to terminate the Form 872-A agreement to limit respondent's ability to raise new issues in the notice of deficiency and cause issuance of the notice before the reassignment of the case to a new appeals officer. Petitioners accomplished those purposes by use of the photocopied Form 872-T. Accordingly, petitioners were not prejudiced by the delay of approximately 2 weeks in obtaining the Form 872-T.[11] We do not deem it appropriate to vary from the clear actual notice requirement of the Form 872-A agreement under the circumstances of this case. See also *Grunwald v. Commissioner*, 86 T.C. 85 (1986).

To reflect the foregoing,

*An appropriate order will be issued.*

---

[10]We do not intend to condone the ineffective manner in which respondent disseminated Forms 872-T. Although we are unable to find any attempt to keep Forms 872-T from taxpayers, similar conditions in future cases may result in such a finding if the confusion and/or availability concerning Forms 872-T does not improve.

[11]We do not consider the fact that petitioners would not be required to pay the deficiencies determined by respondent if we granted their requested relief. That would have been a fortuitous result of the alleged breach and not due to a decision on the merits of petitioners' case. Petitioners have not lost their ability to contest and possibly show that respondent's determination is substantively in error.