MARIAN N. FERGUSON AND M. CARR FERGUSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferguson v. Commissioner
Docket No. 26478-89
United States Tax Court
T.C. Memo 1992-451; 1992 Tax Ct. Memo LEXIS 469; 64 T.C.M. (CCH) 431; August 10, 1992, Filed Decision will be entered under Rule 155. R requested Ps to execute a Form 872-A, Special Consent to Extend the Time to Assess Tax, restricted to specific items related to S, a partnership then being audited, including consequential changes resulting from those items. Held: The plain meaning of the consent restricts the extension of the period of limitations to matters arising out of S only, and R is prohibited from assessing tax with respect to time-barred mathematical and clerical errors which did not result from items relating to S. For Marian N. Ferguson and M. Carr Ferguson, pro sese. For Respondent: Steven R. Winningham. WOLFE
WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A and Rules 180, 181, and 182. [1] Respondent determined a deficiency of $ 4,514 in petitioners' Federal income tax for 1981. *470 After concessions, the sole issue with respect to petitioners' 1981 taxes is whether a restricted consent to extension of the period for assessment and collection permits timely assessment of the portion of the deficiency attributable to computational errors. In the absence of a consensual extension of time, assessment of that portion of the deficiency would be barred by the period of limitations under section 6501(a). Respondent has filed a Motion to Strike under Rule 52 which raises an additional question whether we should strike from petitioners' reply brief new matters which allegedly were not advanced in trial memoranda or opening briefs. The portions of petitioners' reply brief to which respondent objects are arguments which petitioners have incorporated in their brief rather than issues or theories which were not advanced in the pleadings, trial memoranda or opening briefs. Accordingly, respondent's motion is denied. FINDINGS OF FACT The facts of this case have been fully stipulated and are so found. The revised stipulation of facts and attached exhibits are incorporated by this reference. When they filed their petition in this case, petitioners' legal residence was *471 in New York, New York. Petitioners filed their 1981 income tax return on April 15, 1982, electing "Married filing joint return". At that time, they made full payment of the balance of the $ 66,269.29 tax liability set forth on their tax return as due after various withholding and prepayment credits. On their return for the 1981 year, petitioners reported partnership losses and credits as a result of their interest in Sombrero Oil & Gas (Sombrero). Petitioners reported net losses of $ 34,315 as their distributive share from Sombrero. In computing their income tax for 1981, petitioners utilized Form 4726, Maximum Tax on Personal Service Income, and reported Total Tax of $ 66,269.29 on Form 1040, line 54. Petitioners' erroneous computation of the maximum tax on personal service income is set out in column (1), and the correct computation is set out in column (2). Column (2) also reflects adjustments that were subsequently made by respondent to Sombrero items. (1)
(2)
Line 6 (Taxable income from Form 1040, line 34)
$ 154,912.13
$ 155,029
Line 7 (100% of line 6)
154,912.13
155,029
Line 8 (Tax preference items)
24,231.50
24,789
Line 9 (Personal service taxable income
130,680.63
130,240
(Line 7 less line 8)
Line 10 (Tax table)
60,000.00
60,000
Line 11 (Line 9 less line 10)
70,680.63
69,151
Line 12 (50% of line 11)
35,340.32
34,575
Line 13 (Tax on line 6)
75,521.68
76,747
Line 14 (Tax on line 9)
61,163.60
60,882
Line 15 (Line 13 less line 14)
14,358.08
15,865
Line 16 (Tax table)
19,518.00
19,678
Line 17 (Sum of lines 15 and 16)
34,036.08
35,543
Line 18 (Line 17 X .0125)
510.54
444
Line 19 (Line 17 less line 18)
33,525.54
35,099
Line 20 (Maximum tax (Sum of lines 12 and 19))
68,865.86
69,674
*472 On Form 4726, line 13, petitioners incorrectly calculated the tax on taxable income of $ 154,912.13 to be $ 75,521.68. The correct amount of tax on $ 154,912.13 would have been $ 76,671.13, and therefore, petitioners' "maximum tax" should have been shown as $ 70,086, rather than $ 68,865.86 as reported by petitioners. Petitioners' mathematical error at line 13 of Form 4726 was detected by respondent during the initial processing of petitioners' 1981 income tax return. After identifying the mathematical error on petitioners' 1981 income tax return, the Brookhaven Service Center mistakenly reduced petitioners' income tax assessment for 1981 by $ 3,679.56 of tax and $ 223.86 of interest, rather than increasing petitioners' income tax assessment by $ 1,220.14. The Brookhaven Service Center mailed petitioners a Correction Notice dated August 16, 1982, indicating a refund was due petitioners because "an error was made on Form 4726 when [their] maximum tax was figured". The Correction Notice indicated that petitioners' 1981 income tax had been overpaid by $ 3,679.56, which amount, plus interest, was refunded to petitioners within 30 days of the Correction Notice. The detection of *473 the mathematical error and the issuance of the refund predated and were calculated independently of the audit of Sombrero. In connection with respondent's examination of Sombrero, respondent requested petitioners to execute Form 872-A, Special Consent to Extend the Time to Assess Tax. The consent contains the following restriction: (5) The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (a) items affected by carryover or continuing tax effect caused by adjustments to any prior tax return; (b) the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from SOMBRERO OIL AND GAS 1981 (c) the tax basis of the taxpayer's interests in the aforementioned partnerships or organizations treated by the taxpayers as a partnership; and (d) any gain or loss (or the character or timing thereof) realized upon the sale or exchange, abandonment, or other disposition of taxpayer's interest in such partnerships or organizations treated by the taxpayer as a partnership; including any consequential changes to other items based upon such adjustment. Respondent issued a notice of deficiency dated October *474 5, 1989, with respect to petitioners' taxable year 1981. In the notice of deficiency, respondent determined that petitioners' investment tax credit from certain Sombrero partnerships should be decreased by $ 27 for the taxable year 1981; that petitioners' taxable income should be increased by $ 117 due to a decrease in the net loss from certain Sombrero partnerships, and that petitioners were entitled to an increase of $ 557 for their distributive share of intangible drilling costs from certain Sombrero partnerships. As a result of the adjustment made for intangible drilling costs, petitioners' tax preference items increased and their personal service taxable income on Form 4726 was reduced. Petitioners concede respondent's adjustments directly relating to Sombrero and also concede that the notice of deficiency with respect to these adjustments was issued timely. Due to the $ 117 increase in taxable income, respondent increased line 6 of Form 4726 (Taxable Income Form 1040, line 34) by $ 117. In addition, due to the adjustment made for intangible drilling costs, respondent increased line 8 of Form 4726 (Tax Preference Items) by $ 557. As a result of these adjustments and their *475 subsequent flowthrough on Form 4726, respondent discovered petitioners' mathematical error and respondent's clerical error. A correction of these errors is included in the deficiency amount. OPINION Generally, the amount of any income tax must "be assessed within 3 years after the return was filed." Sec. 6501(a). Pursuant to section 6501(c)(4), the taxpayer and respondent may consent in writing to extend the 3-year period of limitations on assessment. Petitioners' 1981 return was filed on April 15, 1982. The period of limitations on assessment and collection under section 6501(a) expired on April 15, 1985. However, the parties signed a consent form extending the period of limitations indefinitely, with respect to specific enumerated items for the year 1981, subject to termination as therein provided. In this case, petitioners have established a prima facie case that the statutory notice was barred by the period of limitations, so the burden of going forward shifted to respondent. Respondent met that burden by the stipulated consent, valid on its face, and executed prior to the expiration of the 3-year statute. Since petitioners assert that the consent is restricted as to *476 certain issues, petitioners are charged with the burden of going forward from that point and affirmatively showing the restrictions of the written consent. Schulman v. Commissioner, 93 T.C. 623, 638-639 (1989); Adler v. Commissioner, 85 T.C. 535, 540-541 (1985). Petitioners' position is that they satisfy this burden as to the items here in dispute by the restrictive terms of the consent itself. Relying upon the plain meaning of the terms of the consent drafted by respondent, petitioners contend that the restricted scope of the consent executed in this case does not permit the correction of the mathematical and clerical errors. Petitioners state that any other interpretation would deprive the parties' efforts to restrict the consent of any meaning and would permit respondent to regard any errors in calculating correct tax liabilities as respondent's responsibility to audit and correct, even after the general statute of limitations has run. Respondent argues that the correction of the mathematical and clerical errors is permitted under the terms of the consent as a "deficiency assessment * * * resulting from any adjustment to * * * (b) the *477 taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from Sombrero Oil and Gas 1981". Respondent also argues that this adjustment is allowed under the terms of the consent as a deficiency "resulting from * * * (d) * * * any consequential changes to other items based upon such adjustment". A consent to extend the period of limitations on assessment is not a contract, but rather a unilateral waiver of a defense by the taxpayer. Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983). "Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement as to the extension." Id.
The parties have stipulated that in connection with respondent's examination of Sombrero, respondent requested petitioners to execute the consent form for their 1981 tax year. Petitioners executed this form only in connection with the audit of the Sombrero items, as evidenced by the restrictive terms of the agreement and by the fact that the Sombrero audit was the only issue concerning both parties at the time the consent was executed. The restricted consent proposed by the auditing *478 agent and executed by both parties, by its terms applied only to deficiencies resulting from adjustments to petitioners' share of any item of income, gain, loss, deduction, or credit of, or distribution from Sombrero, petitioners' tax basis in Sombrero, any gain or loss realized upon the disposition of petitioners' Sombrero interest, and items affected by carryover or continuing tax effects caused by any adjustments to any prior tax returns. Clause (d) of the restriction extends the statute of limitations to any "consequential changes" to other items based upon the allowable adjustments. Petitioners urge that the plain meaning of the consent is that the limitations period is extended only with respect to items arising directly from Sombrero or modified as a consequence of Sombrero changes, in the sense that the amount of a medical expense deduction might be affected by a change in adjusted gross income. Respondent contends that the same terminology unambiguously authorizes correction of the mathematical and clerical errors here in issue. We agree with petitioners. The restriction provisions in the consent expressly state that "The amount of any deficiency assessment is to be *479 limited to that arising from any adjustment to" specific items, including only items affected by carryover or continuing tax effect caused by adjustments to a prior tax return and listed items of income arising out of the Sombrero 1981 partnerships. The extensive and detailed language of the restriction includes no mention of the correction or adjustment of mathematical and clerical errors. In our view, the terms of the consent executed by both parties restrict the extension of the period of limitations to matters arising out of Sombrero only, and respondent is prohibited from assessing tax with respect to other items on petitioners' 1981 tax return. Even if the meaning of the consent were not entirely clear on its face, the same conclusion would be required by the stipulated facts and circumstances in this case. The parties reached agreement that the period of limitations would be extended only with respect to specific items. Petitioners agreed to extend the period of limitations to allow respondent to complete the examination of the Sombrero partnerships. Petitioners did not agree to extend the period of limitations for review of mathematical and clerical errors or other unspecified *480 aspects of their tax return. There is no indication of any such arrangement in the record and no apparent reason for petitioners to agree to a general open-ended permission for review of their tax return. Nevertheless, respondent points out that under clause (b) of the restricted consent, respondent could assess a deficiency "resulting from any adjustment to * * * the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from Sombrero Oil and Gas 1981". Respondent argues that implicit in this restriction is the assumption that the resulting deficiency will be computed properly in accordance with the Internal Revenue Code. Respondent then argues that the term "resulting deficiency" includes correction of any otherwise time-barred mathematical errors, whether related to the partnership audit or not, and that the parties must have intended to restrict correction of unrelated substantive errors but not the correction of unrelated computational errors. Respondent's argument is without foundation in the record. Clause (b) is a specific limitation, referring solely to Sombrero adjustments and may not be used to contend for the assessment *481 of deficiencies bearing no relationship to Sombrero. See Bauer v. Commissioner, T.C. Memo. 1992-257. Respondent also argues that the portion of the deficiency resulting from the correction of the mathematical and clerical errors is covered by clause (d) of the restricted consent. Pursuant to the restriction in clause (d), respondent could assess a deficiency "resulting from * * * any consequential changes to other items based on such adjustment." The phrase "such adjustment" refers to the "adjustments" described in clauses (a) through (d) of the restriction paragraph. Accordingly, the consent empowers respondent, if making a timely adjustment to a Sombrero partnership item, to make any "consequential changes" which result from the Sombrero adjustments. See Bauer v. Commissioner, supra; Powell v. Commissioner, T.C. Memo. 1990-329. Respondent contends that the language of the consent unambiguously authorizes correction of the mathematical and clerical errors. In previous administrative consideration of the term "consequential changes", respondent has issued an interpretation different and more limited than the interpretation *482 respondent now urges. [2] A "consequential change" must occur as a result of an antecedent event or item, and here the restriction paragraph clearly states that the antecedent must be a carryover item (clause (a)) or one of the Sombrero items listed in clauses (b) through (d). The suggestion that "consequential changes" includes the recalculation or correction of computational or clerical errors simply does not reflect the agreement of the parties set forth in the restriction paragraph of the Form 872-A consent. See Bauer v. Commissioner, supra.
*483 As this Court previously has stated in requiring adherence to the terms of a consent on Form 872-A, "A deal is after all a deal, and fairness dictates that both parties adhere to the provisions of the document they both voluntarily signed." Grunwald v. Commissioner, 86 T.C. 85, 89 (1986). The document signed by both parties in this case restricted the consent to Sombrero items, and the deal between the parties was that the statute was to be extended solely as to petitioners' distributive share of Sombrero items and the items enumerated in the consent. A general review of the computation of petitioners' "Maximum Tax on Personal Service Income" and the resultant correction of the mathematical and clerical errors was not implied by either the language of the consent or the objective manifestations of either party's assent to the agreement. Nevertheless, in this case respondent advocates a strained interpretation of language prepared by respondent's own employees. The restriction clause in issue bears all the earmarks of respondent's standard boilerplate. Since the party responsible for drafting such a document or provision as a practical matter controls the *484 language, all other things being equal, in many circumstances in the interpretation of contracts "doubts arising from ambiguity of language are resolved in favor of" the party to whom the boilerplate is presented. 4 Williston on Contracts, sec. 621 (3d ed. 1961); see also Texas & Pacific Railway Co. v. Reiss, 183 U.S. 621, 626 (1902); U.S. Naval Institute v. Charter Communications, 875 F.2d 1044, 1050 (2d Cir. 1989); 3 Corbin on Contracts, sec. 559, at 262 (1960); 1 Restatement, Contracts 2d, sec. 206 (1981). In the present case, we have rested our decision on the plain meaning of the clause in issue as well as the stipulated facts and circumstances and have reached the same conclusion as in similar analogous cases. See Bauer v. Commissioner, T.C. Memo. 1992-257, and Powell v. Commissioner, T.C. Memo. 1990-329, in which, as in the present case, we have rejected the interpretation by respondent with respect to the language of standard agreements for restricted consents to extend the time for assessment of tax as presented by respondent to taxpayers for signature. To reflect concessions, Decision will *485 be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In Rev. Proc. 77-6, 1977-1 C.B. 539, 540, at sec. 2, respondent offers the following examples of consequential changes: .02: To illustrate the principle of consequential changes, assume the principal issue subject to a restricted consent involves the allowability of an exemption for a claimed dependent If resolution of the issue results in an adjustment to disallow the exemption, the prime effect of the adjustment is an increase in taxable income in the amount of the exemption. One possible direct consequence of the adjustment is the disallowance of any medical expenses claimed for the disallowed dependent. If this direct consequence reduces the total itemized deductions to the point that the standard deduction is greater, the disallowance of all itemized deductions and the allowance of the standard deduction would be indirect consequences of the adjustment to the principal issue.
.03: To illustrate further, any adjustment to a principal issue that increases adjusted gross income can have a direct↩ consequence on a deduction for medical expenses and contributions due to the statutory limitations on those items based on a percentage of adjusted gross income.