FRANKLIN R. AND DORIS H. BOWER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bower
Docket No. 16532-89
United States Tax Court
T.C. Memo 1992-446; 1992 Tax Ct. Memo LEXIS 474; 64 T.C.M. (CCH) 403; August 10, 1992, Filed As Corrected August 17, 1992. Decision will be entered for petitioners. For Franklin R. Bower, pro se. For Respondent: Chalmers W. Poston, Jr. and Paul F. Handleman
WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax and increased interest on such deficiencies as follows: Increased
Additions To Tax
Interest
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
Sec. 6621(c)
1982
$ 10,289
$ 514
[1]
$ 2,572
[2]
1983
9,350
468
[1]
2,338
[2]
Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After stipulations, the sole issue for the Court to decide is whether the limitations period for assessing tax with respect to certain leasing activities reported on petitioners' 1982 and 1983 income tax returns has expired. At the time the petition in the instant case was filed, petitioners resided in Potomac, Maryland. FINDINGS OF *475 FACT Petitioners filed timely joint Federal income tax returns for taxable years 1982 and 1983. On April 13, 1989, respondent mailed petitioners the notice of deficiency covering taxable years 1982 and 1983. The notice of deficiency states that a deficiency was determined because "taxpayers were not at risk within the meaning of Internal Revenue Code section 465 with respect to the installment note used to finance the St. Joseph's leasing activity for the taxable years 1982 and 1983." On December 23, 1981, petitioner Franklin R. Bower (hereinafter individually referred to as petitioner) entered into a purchase agreement with St. Joseph Equity Corp. (St. Joseph). Petitioner purchased computer equipment for $ 149,430 with a $ 300 cash down payment, a $ 125,130 nonrecourse installment note, and a $ 24,000 promissory note. At the time of the purchase, petitioner also entered into a lease arrangement with St. Joseph which required him to lease the equipment to St. Joseph. The lease required monthly rent in the amount of $ 2,307.10 for 96 months to be paid to petitioner. Because the monthly rent exceeded the monthly installment note payment by $ 81 per month, St. Joseph was required *476 to pay petitioner the difference. Petitioner was not in a partnership with St. Joseph. On their returns for the taxable years in issue, petitioners reported losses on Schedule E (Supplemental Income) of $ 25,974 on the 1982 return and $ 23,204.80 on the 1983 return. The transaction with St. Joseph was described under the rental income and loss section of Schedule E as "Data Processing -- St. Joseph Equity Corp." Petitioners received a letter dated November 9, 1984, from the Baltimore District Director requesting that they consent to extend the limitations period for taxable year 1981. Petitioner called the Baltimore Office of the Internal Revenue Service (IRS) to inquire about the reason an extension was needed. An IRS employee informed petitioner that the IRS was not examining petitioners' return, but that the Richmond office was examining the "St. Joseph's Equity Corporation partnership" return. Petitioner explained that a mistake must have been made because he was not involved in a partnership with St. Joseph. Petitioner then spoke to a second employee who also informed him that a partnership was being examined. Petitioner again explained that he was not involved in a *477 partnership. The second employee further stated that the IRS wanted to keep petitioners' return open in case any items were disallowed at the "St. Joseph Equity Corporation partnership level", so that any items affecting petitioners' return could also be disallowed. The second employee also verified to petitioner that the restrictive language on the consent enclosed with respondent's November 9, 1984, letter to petitioners indicated that any adjustment was limited to partnership issues. At the time, petitioner thought that the only possible adjustment to petitioners' income tax return would be in the event the IRS determined that the sale and leaseback transaction should have been treated as though petitioner had entered into a partnership with St. Joseph. The consent enclosed in respondent's November 9, 1984, letter to petitioners was a Form 872-A, Special Consent to Extend the Time to Assess Tax (Form 872-A), for taxable year 1981 (the 1981 consent) containing the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (1) items effected [sic] by continuing tax effect caused by adjustments to any prior *478 tax return; (2) the taxpayer's distributive share of any item of income, gain loss, deduction, or credit of or distribution from: St. Joseph Equity Corp. - 54-1083965 and (3) the tax basis of the taxpayer's interest in each aforementioned entity; including any consequential changes to other items based on such adjustments. The use of the term "entity" is without prejudice to the right of the commissioner to challenge whether any such entity exists, or, if existing, the character of such entity. On November 16, 1984, petitioners signed the 1981 consent and, on November 30, 1984, Deborah Flanish signed it on respondent's behalf. On December 17, 1985, the District Director sent petitioners a Form 872-A to extend the limitations period for taxable year 1982. The Form 872-A for taxable year 1982 included the same restrictive language as the 1981 consent. Petitioners, however, requested that the District Director send them a Form 872, Consent to Extend the Time to Assess Tax. Petitioners wanted to execute a Form 872 rather than a Form 872-A because they intended to limit the duration of the extension period. Accordingly, on January 31, 1986, petitioners signed a Form 872 for *479 taxable year 1982, extending the limitations period to April 15, 1988 (the 1982 consent). Petitioners did not read the 1982 consent prior to signing it. The 1982 consent contains the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to the taxpayer's taxable income and any income tax liability with respect to any item which was accounted for, or which should have been accounted for, in Schedule C, Schedule D, Schedule F, or in any other schedule, from or part of the taxpayer's return, by reason of the taxpayer's interest in any entity, activity, or property identified as: St. Joseph Equity Corp. - 54-1083965 including any consequential changes to other items based on such adjustments. The use of the term "entity" is without prejudice to the right of the Commissioner to challenge whether any such entity exists, or, it [sic] existing, the character of such entity. On March 15, 1986, James O'Brien signed the 1982 consent on respondent's behalf. After signing and returning the 1982 consent, petitioner noticed that the 1982 consent contained restrictive language different from that of the 1981 consent *480 and the Form 872-A that they had received from the District Director on December 17, 1985. Petitioner brought the difference to the attention of an employee of the IRS, and petitioner believed that he had formed an understanding with such person that a revised consent would be sent to petitioners containing the same language as the 1981 consent. A revised consent, however, was never sent to petitioners. On July 24, 1986, the IRS sent petitioners a 30-day letter. The letter stated that deductions regarding St. Joseph in the amount of $ 22,415 for taxable year 1981, $ 25,974 for taxable year 1982, and $ 23,205 for taxable year 1983 were being disallowed. Such amounts correspond to deductions for the St. Joseph leasing transaction that petitioners had claimed on their returns for taxable years 1981, 1982, and 1983, respectively. The explanation of adjustments for each taxable year, however, stated: 0757 St. Joseph Equity Corp. We adjusted your return in accordance with the partnership return, which also has been examined. The Internal Revenue Service, Richmond District Office, has forwarded to the above partnership an examination report explaining the adjustments made to those *481 returns. For an explanation of those adjustments, you should contact the designated representatives for that organization. Petitioner responded to the 30-day letter on July 31, 1986, by sending a letter to the Baltimore District Director. In that response, he requested an appeal of "the findings of your examiner because they have made a horrendous mistake." He further stated: They adjusted my return because of some partnership return of St. Joseph Equity Corporation. I have not participated in any partnership with St. Joseph Equity Corporation, or anyone else for that matter. * * * I do own an IBM 3880 Storage Controller and a 3375 Direct Access Storage Drive outright, which I lease to St. Joseph Equity Corporation. If you wish, please audit this as it is reported on my returns. In the meantime, please correct your mistake. On August 22, 1986, petitioner wrote a second letter to the Baltimore District Director again stating that he wanted to appeal the examination findings. Petitioner's letter stated: Your reason for adjusting my returns was "0757 St. Joseph Equity Corp. -- We adjusted your return in accordance with the partnership return which has also been examined." *482 In my letter of July 31, 1986 * * *, I stated that I was not in any partnership with St. Joseph Equity Corporation. My request to audit my return on the basis of the merits of my business transaction was rejected by John Fisher of your Baltimore,MD, office. * * * IRS refused to look at the facts as I requested, but adjusted my return on some alleged partnership with St. Joseph Equity Corporation. This partnership does not nor has ever existed. * * * Since you did not adjust my return on its own merits, I surmise I can only protest on the facts that I am not in a partnership with St. Joseph Equity Corporation and my purchase and leaseback does not constitute a partnership. On December 29, 1986, Irma Rosendahl wrote petitioners that their income tax returns for taxable years 1981, 1982, and 1983 had been assigned to her for possible resolution. Her letter further stated: The case file does not contain any of the paperwork pertaining to your leasing operation that is at issue. I would appreciate if you would send me the documents so that I can study them in advance of a letter conference. On January 5, 1987, petitioners signed a Form 872 extending the limitations *483 period for taxable year 1983 to April 15, 1988 (the 1983 consent). The 1983 consent contains the following restrictive language: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (1) items affected by continuing tax effect caused by adjustments to any prior tax return; (2) the taxpayer's distributive share of any item of income, gain, loss deduction, or credit of, or distribution from: St. Joseph Equity Corp. - 54-1083965 and (3) the tax basis of the taxpayer's interest in each aforementioned entity; including any consequential changes to other items based on such adjustments. The use of the term "entity" is without prejudice to the right of the Commissioner to challenge whether any such entity exists, or, if existing, the character of such entity. On January 14, 1987, Ms. Rosendahl signed the 1983 consent on respondent's behalf. By letter dated April 10, 1987, Ms. Rosendahl notified petitioners of the scheduling of their Appeals conference for April 23, 1987. Her letter further stated: At the conference, we should have available your purchase documents of the lease [sic] computer, its delivery and installation date, *484 and the lease contract. If you wish you may mail the documents to me in time for the conference so I can study them, or you may bring them with you and I can study them during the conference. During the Appeals conference, petitioner told Ms. Rosendahl what had transpired with the Baltimore District Director and told her that petitioners were appealing because the IRS had determined that petitioner was in a partnership with St. Joseph and he believed he was not in such partnership. Petitioner felt that he could not get any specifics from Ms. Rosendahl. Ms. Rosendahl explained to petitioner the options available to petitioners. Ms. Rosendahl, however, never read the examination report or petitioners' protest. On November 4, 1987, Ms. Rosendahl wrote to petitioners requesting an additional extension for the limitations period for taxable years 1982 and 1983. The reason given for the request was stated: As you may remember from our conversations, a St. Joseph's computer leasing case was tried in the tax court about one year ago. You said you would like to await the outcome of that case. It now appears that an opinion cannot be expected before April 15, 1988, the date when *485 the statute of limitations expires on your 1982 and 1983 returns. The 1981 return has an unlimited statute date. Petitioner responded to Ms. Rosendahl's letter on November 16, 1987, and stated that the extension agreement would be signed. The letter also stated: "After our two meetings in April there was only one unresolved issue. That issue was the at risk issue for 1982 and 1983." On November 23, 1987, Ms. Rosendahl wrote to petitioners indicating that petitioners' extension had been received but that it had been unnecessarily altered for taxable years 1982 and 1983, by the addition of a sixth clause attempting to limit the examination of "the St. Joseph Equity Corporation lease" to an at-risk issue. The letter stated that at-risk changes were already covered in the restriction under the clause "consequential changes to other items based on such adjustments." Additionally, the letter stated: The up shot is that clause (4) already restricts the returns to the sale/leaseback issue, but we cannot accept a further restriction within that issue. * * * I am enclosing hereto a new set of forms showing only clauses (4) and (5) for your execution and return to me, however, in *486 the meantime, I will keep the modified forms on file. * * * On December 3, 1987, petitioner responded to Ms. Rosendahl's November 23, 1987, letter stating: "I was very disappointed in your rejection of my restricting the consent to extend the time to assess 1982 and 1983 to the at risk issue." He stated that after their meetings he understood that at-risk was the "only outstanding issue." and "Now, it appears that there was no progress and I am back to where I was when I filed my appeal." Petitioner also posed the following questions: 1. The specifics on why my return was adjusted. 2. What progress has been made on my appeal. 3. Why do you need an extension? We have 4 1/2 months before my present extension expires, more than ample time to completely review my sale and lease back transaction with St. Joseph Equity Corporation. Attached is an outline for us to formally come to an agreement or disagreement on. Only after we complete this evaluation would it then be reasonable for me to grant an extension for specific reasons or take it to court. 4. How will the pending tax court case you mentioned be used in the disposition of my appeal? In his letter, petitioner *487 referred to an outline, in which he posed the following questions: 1. Was this a tax sham? 2. Did investor show due diligence? 3. Was purchase price paid for this lease transaction at a fair market price? * * * 4. Did investor enter this transaction with reasonable intent of making a profit and/or with the insite [sic] of business prospective? * * * 5. Was investor at risk? On December 8, 1987, Ms. Rosendahl wrote to petitioners and stated that a case "exactly the same" as petitioner's circumstances was pending before the U.S. Tax Court. The case pending was Offermann v. Commissioner, which subsequently was decided in a Memorandum Opinion issued as T.C. Memo. 1988-236. Ms. Rosendahl also stated: The "at risk" question is at issue in the case, and from the decision will flow the treatment of the whole leasing issue, not just the matter of the at-risk problem, and that is precisely the reason why we cannot restrict the statute extensions merely to the at-risk item but must keep the leasing operation open as per the restrictive language furnished by the IRS. On January 12, 1988, petitioners signed a Form 872 for taxable years 1982 *488 and 1983 extending the limitations period to April 15, 1989 (the 1982-83 consent). The 1982-83 consent contains the following restrictive language: (4) The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (1) items effected [sic] by continuing tax effects caused by adjustments to any prior tax returns; (2) the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from St. Joseph Equity Corporation, EIN 54-1083965, and (3) the tax basis of the taxpayers' interest in each aforementioned entity; including any consequential changes to other items based on such adjustments. (5) The use of the term "entity" is without prejudice to the right of the commissioner to challenge whether any such entity exists, or, if existing, the character of such entity. On January 20, 1988, Ms. Rosendahl signed the 1982-83 consent on respondent's behalf. On June 28, 1988, Ms. Rosendahl informed petitioners that Offermann v. Commissioner, T.C. Memo. 1988-236, had been decided and had "found that the * * * [taxpayer] was not at risk beyond the amounts that were actually invested - i.e., *489 the cash paid." The parties have stipulated that the substantive issues in the instant case involving the tax treatment of the sale and leaseback transaction with St. Joseph are to be resolved in accordance with the final decision in Barton v. Commissioner, T.C. Memo. 1988-396, vacated and remanded 893 F.2d 306 (11th Cir. 1990), if the limitations period has not expired. Respondent did not issue a notice of deficiency for petitioners' 1981 taxable year because of the decision in Offermann v. Commissioner, T.C. Memo. 1988-236. OPINION In the instant case, we must decide whether the limitations periods were effectively extended for assessment of the deficiencies determined by respondent with respect to petitioner's sale and leaseback transaction for the taxable years in issue. Generally, any deficiencies in a taxpayer's income taxes must be assessed within 3 years after the taxpayer's income tax return is filed. Sec. 6501(a). Prior to the expiration of the time permitted for assessment, the taxpayer and the Secretary may consent in writing to extend the limitations period. Sec. 6501(c)(4). If subsequent written agreements *490 are entered into prior to the expiration of the previously agreed-upon period, the limitations period may be extended further. Sec. 6501(c)(4). A consent to extend the limitations period for assessment is not a contract. Woods v. Commissioner, 92 T.C. 776, 780 (1989); Kronish v. Commissioner, 90 T.C. 684, 693 (1988). "Contract principles are significant, however, because section 6501(c)(4) requires that the parties reach a written agreement as to the extension." Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983). The term "agreement" means an objective manifestation of mutual assent "as evidenced by the parties' overt acts, not the parties' secret intentions". Kronish v. Commissioner, supra at 693. The 1982 consent refers to "Schedules C, D, or F or any other schedule." It also, however, refers to "the taxpayer's interest in any entity, activity or property identified as: St. Joseph Equity Corp." Petitioners did not read the 1982 consent before they signed it, thinking that the restrictive language of the 1982 consent was the same as the restrictive language of the 1981 consent and the Form *491 872-A which respondent sent to them on December 17, 1985; i.e., restrictive language referring to "distributive share." The 1983 consent contains restrictive language referring to "distributive share". The parties argue extensively over the effectiveness of both the 1982 consent and the 1983 consent. Because we hold below that the subsequently executed 1982-83 consent was ambiguous and ineffective for the purpose of extending the period of limitations with respect to the issues in the instant case, however, we do not consider such arguments. Turning to the 1982-83 consent, as noted above, it restricts examination of petitioners' return to "the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of or distribution from St. Joseph Equity Corp." While corporations, like partnerships, do make distributions, corporations do not have distributive shares. Consequently, the reference to distributive share appears to have no meaning. Accordingly, we find that such language is ambiguous. Constitution Publishing Co. v. Commissioner, 22 B.T.A. 426, 428 (1931) ("An instrument is clearly ambiguous and is open to construction when its words, *492 taken literally, lead to absurdity or have no meaning or when two or more meanings could be given."). [1]
When an ambiguity exists in a consent, we will admit extrinsic evidence to determine the parties' intent and then interpret the consent in accordance with such intent. Woods v. Commissioner, supra at 780 (citing Constitution Publishing Co. v. Commissioner, supra). *493 To determine the intention of the parties, we must consider the circumstances surrounding the parties when they signed the instrument. Constitution Publishing Co. v. Commissioner, supra at 429. "We should place ourselves, as nearly as may be, in the situation of the parties so as to view the circumstances as they viewed them and in doing so we are better enabled to judge the meaning of the language used." Id.
In the instant case, throughout his dealings with respondent, petitioner maintained the understanding that the issue being examined was whether he was involved in a partnership with St. Joseph. Petitioner repeatedly attempted to inform respondent that he was not involved in such a partnership. Petitioner's letters to respondent support his testimony. We believe that petitioners intended to extend the period of limitations solely for the purpose of examining the issue of whether petitioner was in a partnership with St. Joseph and do not believe that petitioners ever intended to extend the limitations period to permit respondent to examine petitioners' return for any other issue. We do not find the discussion of the at-risk issue in the Appeals *494 conference to be inconsistent with petitioners' belief. On the other hand, Ms. Rosendahl testified that she always understood that the examination was to cover a sale and leaseback transaction. The correspondence that she sent to petitioners during the period of negotiations over the 1982-83 consent confirms her testimony. Nevertheless, to conclude that the 1982-83 consent covered the sale and leaseback transaction rather than the partnership issue, we would first have to find that the parties reached such an agreement and mutually assented to the examination of the sale and leaseback transaction. That key element, however, is missing in the instant case. We think that the record establishes that the parties had different intentions when they executed the 1982-83 consent. Moreover, the ambiguity contained in the consent is of respondent's own making. We hold that the 1982-83 consent lacks the agreement required under section 6501. See Kronish v. Commissioner, supra at 693; Piarulle v. Commissioner, supra at 1043-1044. Respondent also argues that petitioners should be estopped from arguing that the consents are limited in the *495 manner petitioners contend if we find that petitioners did not intend to extend the limitations period with respect to their sale and leaseback transaction. To apply estoppel, we must find, among other elements, a false representation or a wrongful misleading silence. Kronish v. Commissioner, supra at 695. During the time period that petitioners negotiated the consents for the taxable years in issue, they wrote letters to the IRS and spoke with various employees of the IRS, all the while indicating under no uncertain terms that respondent had mistakenly sought to extend the limitations period for both taxable years for a partnership issue. Ms. Rosendahl, respondent's representative, however, chose to read neither petitioners' protest nor the examination report, and appears to have ignored petitioners' exhortations. We do not think that the record in the instant case establishes either a false representation or a misleading silence. Consequently, respondent's argument that petitioners should be estopped is without merit. Accordingly, we hold that respondent is barred from assessing the deficiency as determined in the notice of deficiency, additions to *496 tax, and increased interest for taxable year 1982 and taxable year 1983. To reflect the foregoing, Decision will be entered for petitioners. Footnotes
1. 50 percent of the interest due. ↩
2. 120 percent of the interest due.↩
1. Petitioners argued that the restrictive language of the 1982-83 consent is unambiguous and cite Goldberg v. Commissioner, T.C. Memo. 1992-108, in support of their position. We find Goldberg to be distinguishable. In Goldberg↩, we held that the restrictive language was unambiguous. The language referred to "small business corporations, partnerships or organizations treated as partnerships * * *, trust, estate, nominee and any other entity from which tax attributes pass to or are properly reportable by [the] taxpayer". Such language is clearly distinguishable from the language of the 1982-83 consent in the instant case.